1 | DEBRA S. BELAGA (S.B. #083237)
dbelaga@omm.com
2 | AARON M. ROFKAHR (S.B. #227008)
arofkahr@omm.com
3 | O'MELVENY & MYERS LLP
Embarcadero Center West
4 | 275 Battery Street
San Francisco, CA  94111-3305
5 | Telephone:    (415) 984-8700
Facsimile:    (415) 984-8701
6 |
Attorneys for Defendant
7 | Bank of America N.A., successor in interest to
Bank of America NT & SA
8 |
9 | **UNITED STATES DISTRICT COURT**
10 | **NORTHERN DISTRICT OF CALIFORNIA**
11 |
12 |
13 |
14 | JOHN L. WHEELER; GLORIA A. WHEELER,
15 |                 Plaintiffs,
16 |      v.
17 | BANK OF AMERICA NT & SA; LIBERTY REVERSE MORTGAGE; 
18 | SEATTLE FINANCIAL GROUP,
19 |                 Defendants.
20 |

Case No.  C-08-03230-JL

**BANK OF AMERICA'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS**

Hearing:        August 27, 2008
Time:            9:30 AM
Location:        450 Golden Gate Ave.,
                 San Francisco, CA,
                 Courtroom F, 15th Floor
Trial Date:      None
Compl. Filed: July 3, 2008 (removed)
Judge:           The Honorable James Larson

21
22
23
24
25
26
27
28

NOTICE OF MOTION AND MOTION TO
STAY PROCEEDINGS

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT, on August 27, 2008, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom F, 15th Floor of the United States District Court for the Northern District of California, San Francisco Division, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Bank of America N.A., successor in interest to Bank of America NT & SA ("Bank of America") will and hereby does move for an order from this Court to stay the above entitled action pending the resolution of a proceeding before the California Supreme Court captioned *Miller v. Bank of America NT & SA*, Supreme Court Case No. S149178, involving the identical theories of recovery, factual allegations and causes of action as this proceeding.

The motion is based on this notice, the attached memorandum of points and authorities, all supporting declarations, the pleadings and other records on file with the Court, the oral argument of counsel, all relevant matters judicially noticeable, and such further evidence and arguments as the Court may consider.


Dated: July 11, 2008


DEBRA S. BELAGA
AARON M. ROFKAHR
O'MELVENY & MYERS LLP


By:          /s/
            Aaron M. Rofkahr
Attorneys for Defendant
Bank of America N.A.

SF1:721018.1

NOTICE OF MOTION AND MOTION TO
STAY PROCEEDINGS

1    DEBRA S. BELAGA (S.B. #083237)
dbelaga@omm.com
2    AARON M. ROFKAHR (S.B. #227008)
arofkahr@omm.com
3    O'MELVENY & MYERS LLP
Embarcadero Center West
4    275 Battery Street
San Francisco, CA  94111-3305
5    Telephone:    (415) 984-8700
Facsimile:    (415) 984-8701
6

7    Attorneys for Defendant
Bank of America N.A., successor in interest to
Bank of America NT & SA
8

9                **UNITED STATES DISTRICT COURT**

10                **NORTHERN DISTRICT OF CALIFORNIA**

11

12

| | |
|---|---|
| 13  JOHN L. WHEELER; GLORIA A. WHEELER, | Case No.  C-08-03230-JL |
| 14                              Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BANK OF BANK OF AMERICA'S MOTION TO STAY PROCEEDINGS** |
| 15          v. | |
| 16  BANK OF AMERICA NT & SA; LIBERTY REVERSE MORTGAGE; | Hearing:      August 27, 2008 |
| 17  SEATTLE FINANCIAL GROUP, | Time:         9:30 AM Location:     450 Golden Gate Ave., |
| 18                              Defendants. | San Francisco, CA, Courtroom F, 15th Floor |
| 19 | Trial Date:   None Compl. Filed: July 3, 2008 (removed) |
| 20 | Judge:        The Honorable James Larson |

21

22

23

24

25

26

27

28

I.    **INTRODUCTION**

This Court can and should exercise its discretion to stay this litigation.  Doing so will promote judicial economy and eliminate the risk of inconsistent rulings on the same legal issue.  The complaint in this action raises the same issues that Bank of America already litigated in the California Superior Court for the County of San Francisco in an earlier action that was reversed by the California Court of Appeal, and is now on appeal before the California Supreme Court.   In fact, the pro se plaintiffs here simply copied verbatim portions of the complaint in the earlier action, and adopted them as their own. Thus, not surprisingly, the challenged banking practices, the causes of action (with one inconsequential exception), the legal theories, and the types of relief sought are identical to those in a case currently being reviewed by the California Supreme Court.

Thus, there is no reason for the parties to be litigating these issues in this Court until after the Supreme Court has decided them. Indeed, there is every reason for *this* Court *not* to be deciding the same issues that are already pending in the Supreme Court. Those reasons are the ones that typically prompt courts to stay duplicative proceedings: the desirability of avoiding waste of resources, prejudice to the parties, the unseemliness of competing actions, and the risks of inconsistent determinations. The Court should therefore exercise its inherent power to stay this suit until appellate proceedings in the first suit are concluded.

II.    **BACKGROUND**

A.    **Miller v. Bank of America**

On August 13, 1998, plaintiff Paul Miller filed a class action in Alameda County against Bank of America N.T. & S.A., predecessor to Bank of America N.A. ("Bank of America") captioned *Miller v. Bank of America*, Alameda Superior Court Case No. 801882-1 ("*Miller*").  In September 1998, he filed a First Amended Complaint, which became the operative complaint in *Miller*.  On the Bank's motion, the action was transferred from Alameda to San Francisco, and became *Miller v. Bank of America*, San

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO STAY
ACTION

1    Francisco Superior Court Case No. CGC-99-301917.  (Declaration of Aaron M. Rofkahr

2    ("Rofkahr Decl."), Ex. B.)[1]

3        In the *Miller* complaint, plaintiffs challenged the banking industry's standard

4    practice of balancing customers' accounts by applying account credits, including deposits

5    of public benefit funds, against account debits, including overdrafts and insufficient funds

6    fees.  Plaintiffs asserted that charging such fees constitutes a creditor's "setoff" barred by

7    California law — in particular, *Kruger v. Well Fargo Bank* 11 Ca1.3d 352 (1974) —

8    which limits creditors' rights to perform a "setoff" against accounts receiving government

9    benefits electronically. The *Miller* complaint also alleged that the Bank was guilty of

10   fraud and misrepresentation when it encouraged customers to avail themselves of

11   electronic deposit, rather than receiving their Social Security benefits through the U.S.

12   mails.  Specifically, Plaintiffs in *Miller* alleged causes of action for (1) violation of

13   California Civil Code §§ 1709, 1710 (fraud), (2) violation of Civil Code §§ 1709, 1710

14   (negligent misrepresentation), (3) violation of Code of Civil Procedure § 704.080 (4)

15   violation of the Consumer Legal Remedies Act, California Civil Code § 1750 *et seq.*, (5)

16   intentional infliction of emotional distress, (6) violation of California Business and

17   Professions Code § 17200 *et seq.*, and (7) violation of California Business and Professions

18   Code § 17500 *et seq.* (Ex. B.)

19       The class in *Miller*, was defined as California residents who maintained a checking

20   or savings deposit account with Bank of America into which payments of Social Security

21   benefits or other public benefits are or have been directly deposited by the government or

22   its agent.  (*See Miller* Judgment at 3, Ex. C.)  The *Miller* complaint focused on one

23   particular account fee: the NSF ("not-sufficient funds") fee that banks charge when a

24   customer writes checks for more than his account balance. Plaintiff alleged that this fee

25   was a "setoff" forbidden by *Kruger.* The complaint alleged further that *Kruger* forbade the

26   Bank from recovering or clearing any overdraft out of future incoming deposits — i.e., if

27   _____

     [1]   Exhibits A through G, referenced herein, are attached to the Declaration of Aaron
28   M. Rofkahr in Support of Bank of America's Motion to Stay Proceedings ("Rofkahr
     Decl.").

                                                    MEMORANDUM OF POINTS AND
                                                    AUTHORITIES ISO MOTION TO STAY
                                                    ACTION

1  a customer ever overdrew his account, the Bank had to "eat" the loss itself.    Bank of

2  America asserted, among other defenses, that:

3      1. Charging standard account fees and clearing overdrafts *within an* account

4          are not creditor "setoffs" of debts and therefore are not forbidden by

5          *Kruger* (which did not even address account fees or overdrafts). Rather,

6          fees and overdrafts are the simple arithmetic of exchanging contractual

7          considerations and balancing accounts, i.e., adding pluses and subtracting

8          minuses. *(Kruger,* by contrast, involved an entirely different situation,

9          where a bank set off an *outside* debt, namely, a delinquent credit card

10         balance, against a checking account)

11     2. California Financial Code section 864, enacted the year after *Kruger,*

12         prescribes a comprehensive set of rules governing banks' setoffs of debts

13         against accounts (including accounts receiving Social Security and

14         government benefits), and explicitly *excludes* account fees and overdrafts

15         from the definition of debts that are subject to the setoff exemption

16         restrictions. Cal. Fin. Code § 864 (a)(2). Otherwise, before a bank could

17         ever charge a fee of any sort, it would have to mail the customer a statutory

18         setoff notice, which could then precipitate a court hearing to determine

19         whether the fee could be charged.

20     3. Forbidding banks from balancing the accounts of Social Security recipients

21         would force banks to change the terms of those accounts in a way that would

22         make Social Security recipients second-class bank customers.  For instance,

23         banks would have to bounce all their NSF checks, refuse to provide them

24         overdraft protection, cancel their ATM cards and limit their ability to make

25         deposits.

26     4. If California law did indeed prohibit banks from charging fees or clearing

27         overdrafts in customers' accounts, it would be preempted by the National

28         Bank Act and federal banking regulations.  In *Lopez v. Washington Mutual*

- 3 -

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO STAY
ACTION

1   *Bank, F.A,* 302 F.3d 900, *amended on denial of rehearing,* 311 F.3d 928

2   (9th Cir. 2002), the Ninth Circuit held that state-law claims by Social

3   Security recipients asserting exemption from NSF fees if they happened to

4   live in California were preempted by federal law governing federal savings

5   associations. 302 F.3d at 906-907.

6       5.  Account fees are part of the contractual consideration to which customers

7           agreed in exchange for the Bank's maintaining their accounts. *Lopez,* 302

8           F.3d at 904.

9   (Rofkahr Decl. ¶ 4.)

10      In January 2004, trial commenced in *Miller.*  On March 4, 2005, the trial court

11  entered a judgment awarding the plaintiff class approximately $285 million in damages

12  and restitution, and awarding the named plaintiff $275,000 in individual damages.  (Ex.

13  C, at 2.)  The *Miller* court also directed that Bank of America be "enjoined from setting

14  off or collecting NSF fees and other monetary claims from directly deposited Social

15  Security funds and public benefits."  (*Id.* at 5.)

16      On November 20, 2006, the California Court of Appeal for the First Appellate

17  District reversed the trial court's Judgment in *Miller.*   The Court of Appeal found that

18  California law does not prohibit, and in fact allows, the standard banking practices at

19  issue. *See Miller v. Bank of America*, NT & SA, 144 Cal.App.4th 1301, 1314 (2006)

20  (Decision and Order Reversing *Miller* Judgment, Ex. D.)  On March 21, 2007, the

21  California Supreme Court granted plaintiffs' petition for review in *Miller.*   As of July 11,

22  2008, the *Miller* case is fully briefed before the California Supreme Court, and the parties

23  are awaiting a date for oral argument.  (*See* Supreme Court Docket, Case No. S149178,

24  Ex. A.)

25      **B.     Anderson v. Bank of America**

26      On February 17, 2005, a class action complaint captioned *Anderson v. Bank of*

27  *America*, Case No. CGC-05-438769 ("*Anderson*"), was filed in the California Superior

28  Court for the County of San Francisco.  (*See Anderson* complaint, Ex. E.  )  In that suit,

- 4 -

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO STAY
ACTION

1  the issues were exactly the same as those tried in *Miller*, namely, whether charging fees

2  violates *Kruger's* policy about creditor setoffs, and whether the Bank misrepresented its

3  right to charge fees or the benefits of electronic deposit.  All the causes of action that were

4  tried in *Miller* are reasserted in *Anderson*.[2]  The main difference between the *Miller* and

5  *Anderson* complaints is that the class period for the latter is alleged to begin on January 1,

6  2004 (after the trial in *Miller* commenced).  Other than this, the *Anderson* (putative) class

7  is the same as the class certified in *Miller*.  Thus, it appears that plaintiffs here are

8  members of the (putative) class in *Anderson*.

9        On July 26, 2005, Bank of America filed a motion to stay the *Anderson* case

10  pending the appeal in *Miller*.  The Bank argued that because the legal issues and theories

11  of recovery were identical to those advanced in *Miller*, that the court should stay the

12  *Anderson* case in order to eliminate the risk of conflicting rulings, prejudice to the

13  defendant, and the waste of judicial resources.  On October 25, 2005, the trial court stayed

14  the *Anderson* matter pending the resolution of the *Miller* appeal.  (*See* Order Granting

15  Bank of America NT & SA's Motion to Stay, Ex. F.)

16        **C.    The Present Case**

17        On May 28, 2008, plaintiffs filed this action captioned *John L. Wheeler v. Bank of*

18  *America, NT & SA et al.*, Case No. RG-08-389597 ("*Wheeler*") in the California Superior

19  Court for the County of Alameda.  (*See Wheeler* Complaint, Ex. G.)  Plaintiffs have

20  named as defendants Bank of America, NT & SA, Liberty Reverse Mortgage, and Seattle

21  Financial Group.  Plaintiffs in *Wheeler* allege causes of action for (1) violation of

22  California Civil Code §§ 1709, 1710 (fraud), (2) violation of Civil Code §§ 1709, 1710

23  (negligent misrepresentation), (3) violation of Code of Civil Procedure § 704.080 (4)

24  intentional infliction of emotional distress, and (5) defamation.  The theory of recovery,

25  factual allegations and causes of action in the *Wheeler* complaint are virtually identical to

26

27  _____

    [2]    In place of the violation-of-California-statutory-law cause of action unsuccessfully
28  alleged in the *Miller* complaint, the *Anderson* complaint substitutes a purported cause of
    action for "violation of public policy." (Ex. E.)

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO STAY
ACTION

1  those alleged in the *Miller*.  (*Compare* Ex. B *with* Ex. G.)  On July 3, 2008, Bank of

2  America timely removed this case to federal court.

3      As in *Miller*, plaintiffs here are challenging the banking industry's standard

4  practices of balancing customers' accounts by applying account credits, including deposits

5  of public benefit funds, against account debits, including overdrafts and insufficient funds

6  fees.  With the exception of plaintiffs' fifth cause of action for defamation, each cause of

7  action plaintiffs have brought in *Wheeler* was also brought by plaintiffs in *Miller*.  In

8  addition, each of the allegations offered in support of each of the first four causes of

9  action in the *Wheeler* complaint are virtually identical to those causes of action in the

10  *Miller* complaint.  But as the Court of Appeal determined in *Miller*, California law does

11  not prohibit and, indeed, authorizes the Bank's practice of balancing customer accounts.

12  This is the very issue that is currently being considered by the California Supreme Court,

13  and is the plaintiffs' sole basis for recovery here.

14      The only real difference between the present complaint and the complaint in *Miller*

15  is that plaintiffs here name two additional defendants:  Seattle Financial Group and

16  Liberty Reverse Mortgage.  But, beyond the case caption, Seattle Financial Group is not

17  even mentioned in *Wheeler* complaint.[3]  (*See* Ex. G.)  And given that plaintiffs here

18  simply copied verbatim certain causes of action from the *Miller* complaint against Bank of

19  America, it is not surprising that the allegations referencing Liberty Reverse Mortgage are

20  unrelated to the five causes of actions plaintiffs assert in the *Wheeler* complaint.  There

21  are only two allegations that expressly mention Liberty Reverse Mortgage, and both

22  allegations are in the section of the *Wheeler* complaint describing the "Parties" to the

23  action.  (*Id.*)  Moreover, neither Liberty Reverse Mortgage nor Seattle Financial Group

24  has been served with a copy of a summons and the *Wheeler* complaint.

25

26

27

28
    [3]    The Wheeler complaint references a "Seattle Mortgage Company" (Ex. G at ¶ 11) and a "Seattle Savings Bank" (Ex. G at ¶ 2), but not Seattle Financial Group.

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO STAY
ACTION

III.   **ARGUMENT**

    A.   **The Court Should Exercise Its Inherent Authority to Stay the *Wheeler* Action Pending the *Miller* Appeal**

It is within the Court's inherent powers to stay a proceeding.  *See, e.g.*, *Hewlett-Packard Co. v. EMC Corp.*, No. C. 04-04546), 2005 WL 289983 at *2 (N.D. Cal. Feb. 3, 2005) ("District courts have inherent authority to stay proceedings before them."), *citing Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 817 (9th Cir.2003).  "When considering a motion to stay, the district court should consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by [granting the stay]."  *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 (C.D. Cal. 1997).

Here, all three factors weigh in favor of granting Bank of America's request for a stay.  If this action is not stayed, the first order of business will be for Bank of America to assert the defenses described above by means of a motion for judgment on the pleadings, summary judgment, or some other procedural mechanism. Thus, this Court would have to decide the same issues that are now before the Supreme Court — e.g., (1) whether standard account fees are a "setoff" of a debt; (2) whether the policy of *Kruger* should be extended to account fees or whether, as the Social Security Administration has contended, it should not; (3) whether Financial Code section 864 explicitly permits banks to charge fees without going through the setoff and levy exemption procedures; and (4) whether state-law claims that would bar national banks from balancing checking accounts by ordinary arithmetic are preempted by the National Bank Act.

It simply makes no sense for this Court to be deciding those issues in advance of the Supreme Court — particularly since any decision by the latter will obviously bind this Court, and might therefore vitiate any decisions this Court might reach.  Indeed, Bank of America is confident that the Supreme Court will affirm the Court of Appeal's reversal of the Judgment in *Miller*, and thus, effectively end this case.  Moreover, the Supreme Court will be deciding the issues based upon a voluminous record

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO STAY
ACTION

1  that has been fully developed during six years of litigation, and a month-long trial, in

2  *Miller*.  It would be prejudicial and immensely wasteful for Bank of America to replicate

3  that same record and reargue the same issues here, and for the various amicus curiea to

4  submit briefings similar to those they have filed with the Supreme Court in *Miller*, in

5  order for this Court to enter rulings that might be immediately nullified or superseded by

6  the decision of the Supreme Court.

7       Plaintiffs will certainly not be prejudiced by a stay of this action.  Any delay

8  that plaintiffs might experience likely would be small given that the Miller case is fully

9  briefed before the Supreme Court, and the prejudice to Bank of America would far

10  outweigh any such harm.  Indeed, once the Supreme Court reaches a decision in *Miller*, all

11  of the parties – including plaintiffs – will benefit from increased efficiency in deciding the

12  legal issues at the core of this case.

13

14       WHEREFORE, Bank of America requests that this Court exercise its

15  authority to stay this action until the appellate review of *Miller* before the California

16  Supreme Court is completed.

17

18

19       Dated: July 11, 2008

20             DEBRA S. BELAGA
             AARON M. ROFKAHR
21             O'MELVENY & MYERS LLP

22

23       By:_____/s/_____
             Aaron M. Rofkahr
24             Attorneys for Defendant
             Bank of America N.A.

25

26  SF1:721014.2

27

28

- 8 -

MEMORANDUM OF POINTS AND
AUTHORITIES ISO MOTION TO STAY
ACTION