1 DEBRA S. BELAGA (S.B. #083237)
  dbelaga@omm.com
2 AARON M. ROFKAHR (S.B. #227008)
  arofkahr@omm.com
3 O'MELVENY & MYERS LLP
  Embarcadero Center West
4 275 Battery Street
  San Francisco, CA 94111-3305
5 Telephone: (415) 984-8700
  Facsimile: (415) 984-8701
6
  Attorneys for Defendant
7 Bank of America N.A., successor in interest to
  Bank of America NT & SA
8

9              **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11

12
   JOHN L. WHEELER; GLORIA A.          Case No. C-08-03230-JL
13 WHEELER,
                                        **DECLARATION OF AARON M.**
14              Plaintiffs,             **ROFKAHR IN SUPPORT OF**
                                        **DEFENDANT BANK OF BANK OF**
15      v.                              **AMERICA'S MOTION TO STAY**
                                        **PROCEEDINGS**
16 BANK OF AMERICA NT & SA;
   LIBERTY REVERSE MORTGAGE;
17 SEATTLE FINANCIAL GROUP,

18              Defendants.

19

20

21

22

23

24

25

26

27

28

I, Aaron M. Rofkahr, declare as follows:

1.      I am an attorney with the law firm of O'Melveny & Myers LLP, counsel of record for defendant Bank of America, N.A, successor in interest to Bank or America NT & SA ("Bank of America").  The matters set forth herein are true and correct based upon my own personal knowledge or based upon my review of public documents and, if called as a witness, I could and would testify competently thereto.  I submit this declaration in support of Bank of America's Motion to Stay Proceedings.

2.      O'Melveny & Myers LLP is counsel of record in the case of *Miller v. Bank of America N.T. S.A.,* Case No. S149178, which is currently pending before the California Supreme Court.  Attached hereto as Exhibit A is a true and correct copy of the California Supreme Court's online docket in *Miller*.

3.      On August 13, 1998, plaintiff Paul Miller filed a class action in Alameda County against Bank of America N.T. & S.A., predecessor to Bank of America N.A. ("Bank of America") entitled *Miller v. Bank of America*, Alameda Superior Court Case No. 801882-1 ("*Miller*").  In September 1998, he filed a First Amended Complaint, which became the operative complaint in *Miller*.  On the Bank's motion, the action was transferred from Alameda to San Francisco, and became *Miller v. Bank of America*, San Francisco Superior Court Case No. CGC-99-301917.  Attached hereto as Exhibit B is a true and correct copy of the operative First Amended Complaint in *Miller*.

4.      Among the various defenses that Bank of America asserted during the course of the *Miller* litigation were the following:

   a.      Charging standard account fees and clearing overdrafts within an account are not creditor "setoffs" of debts and therefore are not forbidden by *Kruger v. Well Fargo Bank* 11 Ca1.3d 352 (1974), which did not even address account fees or overdrafts. Rather, fees and overdrafts are the simple arithmetic of exchanging contractual considerations and balancing accounts, i.e., adding pluses and subtracting minuses. (*Kruger*, by contrast, involved an entirely different

ROFKAHR DECL. ISO MOTION TO STAY

1    situation, where a bank set off an outside debt, namely, a delinquent credit card

2    balance, against a checking account)

3            b.      California Financial Code section 864, enacted the year after

4    *Kruger*, prescribes a comprehensive set of rules governing banks' setoffs of debts

5    against accounts (including accounts receiving Social Security and government

6    benefits), and explicitly excludes account fees and overdrafts from the definition of

7    debts that are subject to the setoff exemption restrictions. Cal. Fin. Code § 864

8    (a)(2). Otherwise, before a bank could ever charge a fee of any sort, it would have

9    to mail the customer a statutory setoff notice, which could then precipitate a court

10    hearing to determine whether the fee could be charged.

11            c.      Forbidding banks from balancing the accounts of Social

12    Security recipients would force banks to change the terms of those accounts in a

13    way that would make Social Security recipients second-class bank customers.  For

14    instance, banks would have to bounce all their NSF checks, refuse to provide them

15    overdraft protection, cancel their ATM cards and limit their ability to make

16    deposits.

17            d.      If California law did indeed prohibit banks from charging fees

18    or clearing overdrafts in customers' accounts, it would be preempted by the

19    National Bank Act and federal banking regulations.  In *Lopez v. Washington Mutual*

20    *Bank, F.A*, 302 F.3d 900, amended on denial of rehearing, 311 F.3d 928 (9th Cir.

21    2002), the Ninth Circuit held that state-law claims by Social Security recipients

22    asserting exemption from NSF fees if they happened to live in California were

23    preempted by federal law governing federal savings associations. 302 F.3d at 906-

24    907.

25            e.      Account fees are part of the contractual consideration to which

26    customers agreed in exchange for the Bank's maintaining their accounts. *Lopez*,

27    302 F.3d at 904.

28

ROFKAHR DECL. ISO MOTION TO STAY

1        5.     Attached hereto as Exhibit C is a true and correct copy of the

2   Judgment in *Miller v. Bank of America*, Case No. 301917, filed on March 4, 2005, in the

3   Superior Court of the State of California for the County of San Francisco.

4        6.     Attached hereto as Exhibit D is a true and correct copy of the

5   Decision reversing the trial court's Judgment in *Miller*, filed on November 20, 2006, in

6   the California Court of Appeal for the First Appellate District.

7        7.     Attached hereto as Exhibit E is a true and correct copy of the

8   complaint captioned *Anderson v. Bank of America, NT & SA et al.*, Case No. CGC-05-

9   438769 ("*Anderson*"), filed February 17, 2005 in the California Superior Court for the

10   County of San Francisco.

11        8.     On July 26, 2005, Bank of America filed a motion to stay the

12   *Anderson* case pending the appeal in *Miller*.  The Bank argued that because the legal

13   issues and theories of recovery were identical to those advanced in *Miller*, that the court

14   should stay the Anderson case in order to eliminate the risk of conflicting rulings,

15   prejudice to the defendant, and the waste of judicial resources.  On October 25, 2005, the

16   trial court stayed the *Anderson* matter pending the resolution of the *Miller* appeal.

17   Attached hereto as Exhibit F is a true and correct copy of the Order Granting Bank of

18   America NT & SA's Motion to Stay the Proceedings in *Anderson*.

19        9.     Attached hereto as Exhibit G is a true and correct copy of the

20   complaint captioned *Wheeler v. Bank of America, NT & SA et al.*, Case No. RG-08-

21   389597, filed May 28, 2008 in the California Superior Court for the County of Alameda.

22      I declare under penalty of perjury under the laws of the State of California that

23   the foregoing is true and correct

24

25

26

27

28

   ROFKAHR DECL. ISO MOTION TO STAY

1

2          Executed this 11th day of July, 2008, at San Francisco, California.

3

4

5

6

7                                              By: _____/s/_____
                                                       Aaron M. Rofkahr
8                                              Attorneys for Defendant
                                               Bank of America N.A.
9

SF1:721480.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    - 4 -        ROFKAHR DECL. ISO MOTION TO STAY

# EXHIBIT

# A





# CALIFORNIA APPELLATE COURTS
## Case Information

## Supreme Court

Change court

Court data last updated: 07/02/2008 09:53 AM

**Supreme Court**

Welcome

Search

E-mail

Calendar

Help

Opinions

C|C
home

Case Summary    Docket    Briefs
Disposition    Parties and Attorneys    Lower Court

## Docket (Register of Actions)

**MILLER v. BANK OF AMERICA**
**Case Number S149178**

| Date | Description | Notes |
|------|-------------|-------|
| 12/29/2006 | Petition for review filed | Paul Miller, Plaintiff and Appellant by James C. Sturdevant, counsel |
| 01/03/2007 | Record requested | |
| 01/05/2007 | Request for extension of time filed (AA) | to February 1, 2007 to file respondents - Bank of America, NT & SA answer to petition for review. |
| 01/08/2007 | Received Court of Appeal record | file jacket/briefs/loose papers/four boxes |
| 01/10/2007 | Extension of time granted | On application of respondent, Bank of America, N.A. and good cause appearing, it is ordered that the time to serve and file the answer to the petition for review is extended to and including January 26, 2007. |
| 01/24/2007 | Received: | amended proof of service for respondent's amicus letter. |
| 01/26/2007 | Answer to petition for review filed | Bank of America, NT & SA, respondents by Debra S, Belaga, counsel |
| 02/05/2007 | Reply to answer to petition filed | Paul Miller, appellant by James C. Sturdevant, counsel |
| 02/15/2007 | Time extended to grant or deny review | The time for granting or denying review in the above-entitled matter is hereby extended to and including March 29, 2007, or the date upon which review is either granted or denied. |
| 03/21/2007 | Petition for review granted (civil case) | The applications to appear as counsel pro hac vice are granted. The petition for review is GRANTED. Chin, J., was recused and did not participate. Votes: George, C. J., Kennard, Baxter, Werdegar, Moreno and Corrigan, JJ. |
| 03/21/2007 | Letter sent to: | counsels |
| 04/05/2007 | Certification of interested entities or persons filed | Debra S. Belaga, O'Melveny & Myers LLP for appellants Bank of America |
| 04/05/2007 | Request for extension of time | to June 1, 2007 to file appellants opening brief on the merits by James C. Sturdevants, counsel |

| | | filed (AA) | |
|---|---|---|---|
| 04/11/2007 | Certification of interested entities or persons filed | Paul Miller, appellant James C. Sturdevant, counsel | |
| 04/13/2007 | Extension of time granted | On application of appellant, Paul Miller, and good cause appearing, it is ordered that the time to serve and file the opening brief on the merits is extended to and including June 1, 2007. | |
| 06/01/2007 | Opening brief on the merits filed | counsel for plf. and aplt. (Miller) | |
| 06/15/2007 | Request for extension of time filed (AA) | Resspondent, Bank of America requesting 43 days to August 13, 2007 to file answering brief on the merits. by Jonathan D. Hacker, counsel | |
| 06/20/2007 | Extension of time granted | to August 13, 2007 to file appellant (Bank of America, NT & SA.) answer brief on the merits. | |
| 07/19/2007 | Request for extension of time filed (AA) | Appellant (Bank of America) requesting an additional 30 day to September 12, 2007 to file answerw brief on the merits. by Johnathan D. Hacker, counsel | |
| 07/24/2007 | Extension of time granted | to September 12, 2007 to file appellant (Bank of America) answer brief on the merits. | |
| 09/13/2007 | Request for judicial notice filed (granted case) | Bank of America, respondent by Walter Dellinger, counsel | |
| 09/13/2007 | Answer brief on the merits filed | Bank fo America, defendant and appellant by Walter Dellinger, counsel crc.8.25(b) | |
| 09/19/2007 | Request for extension of time filed (AA) | Appellant (Paul Miller) requesting extension till October 22, 2007 to file reply brief on the merits. by James C. Sturdevant, counsel | |
| 09/25/2007 | Extension of time granted | On application of appellants and good cause appearing, it is ordered that the time to serve and file the reply brief on the merits is extended to and including October 22, 2007. | |
| 09/26/2007 | Request for extension of time filed (AA) | Appellant requesting extension till October 22, 207 to file opposition to Bank of America's request for judicial notice. by James C. Sturdevant, counsel | |
| 10/01/2007 | Extension of time granted | On application of appellants (Paul Miller) and good cause appearing, it is ordered that the time to serve and file the opposition to Bank of America's request for Judicial Notice is extended to and including October 22, 2007. | |
| 10/09/2007 | Request for extension of time filed (AA) | Paul Miller - respondents and cross-appellants requesting extension of time till November 16, 2007, to file reply brief on the merits and opposition to Bank of America's request for Judicial Notice by James C. Sturdevant, counsel | |
| 10/15/2007 | Extension of time granted | On application of plaintiffs and appellants and good cause apearing, it is ordered that the time | |

California Courts - Appellate Court Case Information

| | | to serve and file the reply brief on the mertis and opposition to defendant and appellant's request for judicial notice is extended to and including November 16, 2007. |
|---|---|---|
| 11/16/2007 | Application to file over-length brief filed | Paul Miller, respondents and cross-appellants by James C. Sturdevant, counsel |
| 11/16/2007 | Opposition filed | respondent and cross-appellant - Paul Miller's oppostition to Bank of America's request for judicial by James C. Sturdevant, counsel |
| 11/16/2007 | Request for judicial notice filed (granted case) | Paul Miller, respondents and cross appellants by James C. Sturdevant, counsel |
| 11/19/2007 | Reply brief filed (case fully briefed) | Paul Miller, respondent and cross-appellants by James C. Sturdevant, counsel with permissioin |
| 11/19/2007 | Opposition filed | Bank of America, appellants and cross-respondents by Jonathan D. Hacker |
| 12/17/2007 | Received application to file amicus curiae brief | California Bankers Association in support of appellants and cross-respondents Bank of America. by Jonathan R. Bass, counsel |
| 12/17/2007 | Received application to file amicus curiae brief | AARP, Congress of California Seniors, National Consumer Law Center, National Senior Citizen's Law Center and Western Center on Law & Poverty in support of respondent and cross-appellant - Paul Miller. by Barbara Jones, counsel |
| 12/17/2007 | Received application to file amicus curiae brief | American Bankers Assn, Consumer Bankers Assn, Credit Union National Assn, Financial Services Roundtable & Independent Community Bankers of America Attorney Laurence J. Hutt [in support of aplt Bank of America] |
| 12/17/2007 | Received application to file amicus curiae brief | The United State of America in support of appellants and cross-respondents Bank of America. by Thomas M. Bondy, counsel |
| 12/17/2007 | Received application to file amicus curiae brief | Center for Responsible Lending in support of respondent and cross-appellant - Paul Miller by Eric Halperin, counsel |
| 12/18/2007 | Received application to file amicus curiae brief | The California Reinvestment Coalitioin in support of resopndent and cross-appellant Paul Miller. by Arthur D. Levy, counsel |
| 12/20/2007 | Received application to file amicus curiae brief | National Association of Consumer Advocates in support of appellant - Paul Miller. by Robert M. Bramson, counsel crc.8.25(b) |
| 12/24/2007 | Received application to file amicus curiae | Iowa Attorney General Thomas A. Miller in support of appellant Paul Miller. by Jeffrey L. Fazio, counsel |

| | | brief | |
|---|---|---|---|
| 12/24/2007 | Received: | | application to file late filing of applicaiton of Iowa Attorney General Thomas A. Miller in support of appellant Paul Miller. by Jeffrey L. Fazio, counsel |
| 12/27/2007 | Request for extension of time filed (AA) | | Joint application for extension of time to respond to briefs submitted by amici curiae . Defendant and Appellant - Bank of American and Plaintiff and Appellant - Paul Miller jointly request an additional twenty-two days to and including January 29, 2008 to file and serve their respective replies to any amicus curiae briefs . by Jonathan D. Hacker and James Sturdeveant, counsels |
| 12/27/2007 | Permission to file amicus curiae brief granted | | California Bankers Association by Jonathan R. Bass |
| 12/27/2007 | Amicus curiae brief filed | | The applicaiton of California Bankers Associaiton for permission to file an amicus curiae brief in support of appellant Bank of America is hereby granted. An answer thereto may be served and filed by any party within twenty days of the filing of the brief. |
| 12/27/2007 | Permission to file amicus curiae brief granted | | AARP, NCLC, NSCLC, CCS and Western Center on Law & Poverty. by Barbara Jones, counsel |
| 12/27/2007 | Amicus curiae brief filed | | The application of AARP, NCLC, NSCLC, CCS and Western Center on Law & Poverty for permission to file an amicus curiae brief in support of appellants Paul Miller, et al., is hereby granted. An answer thereto may be served and filed by any party within twenty days of the filing of the brief. |
| 12/27/2007 | Permission to file amicus curiae brief granted | | American Bankers Associaiton, Consumer Bankers Association, Credit Union National Association, Financial Services Rountable, Independent Community Bankers of America. by Laurence J. Hutt, counsel |
| 12/27/2007 | Amicus curiae brief filed | | The application of American Bankers Association, Consumer Bankers Association, Credit Union National Association, financial Services Roundtable, Independant Community Bankers of America for permission to file an amicus curiae brief in support of appellant Bank of America is hereby granted. An answer thereto may be served and filed by any party within twenty days of the filing of the brief. |
| 12/27/2007 | Permission to file amicus curiae brief granted | | The United States of America. by Thomas Bondy. |
| 12/27/2007 | Amicus curiae brief filed | | The application of The United State of America for permission to file an amicus curiae brief in support of appellant Bank of America is hereby |

California Courts - Appellate Court Case Information

| | | |
|---|---|---|
| | | granted. An answer thereto may be served and filed by any party within twenty days of the filing of the brief. |
| 12/27/2007 | Permission to file amicus curiae brief granted | Center for Responsible Lending. by Eric Halperin, counsel |
| 12/27/2007 | Amicus curiae brief filed | The application of Center for Responsible Lending for permission o file an amicus curiae brief in support of appellants Paul Miller, et al., is hereby granted. An answer thereto may be served and filed by any party within twenty days of the filing of the brief. |
| 12/27/2007 | Permission to file amicus curiae brief granted | California Reinvestment Coalition. by Arthur D. Levy, counsel |
| 12/27/2007 | Amicus curiae brief filed | The application of California Reinvestment Coalition for permission to file an amicus curiae brief in support of appellant Bank of America is hereby granted. An answer there to may be served and filed by any party within twenty days of the filing of the briefs. |
| 12/27/2007 | Permission to file amicus curiae brief granted | National Association of Consumer Advocates. by Robert M. Bramson, counsel |
| 12/27/2007 | Amicus curiae brief filed | The application of National Association of Consumer Advocates for permission to file an amicus curiae breif in support of appellants Paul Miller, et al., is hereby granted. An answer thereto may be served and filed by any party within twenty days of the filing of the brief. |
| 12/28/2007 | Received: | Application by California Credit Union League to join amicus Curiae brief of California Bankers Association. by Jonathan R. Bass, counsel |
| 01/02/2008 | Permission to file amicus curiae brief granted | California Credit Union League to join amicus curiae brief of California Banks Association. by Jonathan R. Bass, counsel with permission |
| 01/02/2008 | Amicus curiae brief filed | California Credit Union League by Jonathan R. Bass, counsel with permission |
| 01/02/2008 | Permission to file amicus curiae brief granted | Thomas A. Miller in support of appellant - Paul Miller. by Jeffrey L. Fazio, counsel |
| 01/02/2008 | Amicus curiae brief filed | The application of Thomas A. Miller for permision to file an amicus curiae brief in support of plaintiff and appellant Paul Miller is hereby granted. An answer thereto may be served and filed by any party within twenty days of the filing of the brief. With permission |



| | | |
|---|---|---|
| 01/02/2008 | Extension of time granted | On application of plaintiff and appellant - Paul Miller and defendant and appellant - Bank of America, NT & SA, and good cause apearing, it is ordered that the time to serve and file the reply briefs filed in this case is extended to and including January 29, 2008. |
| 01/04/2008 | Note: Mail returned (unable to forward) | Jeffrey L. Fazio |
| 01/14/2008 | Note: Mail returned (unable to forward) | Jseffrey L. Fazio, counsel |
| 01/15/2008 | Change of contact information filed for: | James C. sturdevant, counsel for plaintiff and appellant. |
| 01/29/2008 | Response to amicus curiae brief filed | Paul Miller, plaintiff and appellant by James C. Sturdevant, counsel |
| 01/30/2008 | Response to amicus curiae brief filed | Appellant Bank of America's Consolidated Response to Briefs of Amici Curiae Briefs by Walter Dellinger, O'Melveny & Myers LLP, counsel CRC 8.25(b) |
| 01/31/2008 | Received: | respondent's corrected table of authorities to answer brief to the amicus curiae briefs by James C. Sturdevant, counsel for appellant |

**Click here** to request automatic e-mail notifications about this case.

©2007 Judicial Council of California

# EXHIBIT

# B

1

BOFA_MOFO_018471

## CASE ASSIGNMENT

CASE:          PAUL MILLER V. BANK OF AMERICA

COURT:         SUPERIOR
CASE NUMBER:   8018821
COUNTY:        ALAMEDA              STATE:   CA
DOCUMENT TYPE: SUMMONS, COMPLAINT

    SERVICE
      How Received:              PROCESS SERVER
      Original Receiving unit:    13018
      Date Received by Orig. Unit:  8/25/98

    LITIGATION NORTH:     Date Received:              8/25/98
                    Service Accepted by:     CT

    ASSIGNED TO:    SPENCER

    COMMENTS:       APPEARANCE OR ANSWER DUE WITHIN THIRTY DAYS.

DATE ASSIGNED:          8/25/98          FROM:   Janice M. Fetsch
                                                 Assistant General Counsel
                                                 Office of General Counsel
                                                 Litigation North #3017
ENTRY #: 115067 / JJM : JJM                      Phone No. (415) 622-6835
(Printed 8/25/98 by JJM)

BOFA MOFO 018472

## CASE ASSIGNMENT

CASE:          PAUL J. MILLER V. BANK OF AMERICA

COURT:

CASE NUMBER:

COUNTY:                              STATE.  CA

DOCUMENT TYPE: THREATENED SUIT

SERVICE

How Received.                 CERTIFIED MAIL

Original Receiving unit:       OFC GEN COUNSEL

Date Received by Orig. Unit:   8/15/98

LITIGATION NORTH:    Date Received:              8/19/98

Service Accepted by:

ASSIGNED TO    SPENCER

COMMENTS:      GREG, THIS IS THE MATTER WE TALKED ABOUT LAST WEEK.  A LAWSUIT
                HAS ALREADY BEEN FILED.  -JANET FETSCH

DATE ASSIGNED:        8/19/98         FROM:   Janice M. Fetsch
                                              Assistant General Counsel
                                              Office of General Counsel
                                              Litigation North #3017
ENTRY #: 115016 / JJM : JJM                   Phone No. (415) 622-6835
(Printed 8/19/98 by JJM)

BOFA  MOFO  018473



## CT System

**Service of Process Transmittal Form**
Los Angeles, California

**08/24/1998**

Via Federal Express (2nd Day)

TO: DAYSI ROJAS
BANK OF AMERICA NT & SA
555 CALIFORNIA STREET
6TH FLOOR
SAN FRANCISCO, CA  94104

RE:  **PROCESS SERVED IN CALIFORNIA**

FOR    Bank of America NT & SA Domestic State: De
       True Name : BankAmerica Corporation

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. TITLE OF ACTION:          Paul Miller vs Bank of America N.T. & S.A., et al

2. DOCUMENT(S) SERVED:       Summons, Complaint, Notice, Alternative Dispute Resolution Procedures,
                             Plaintiff's Statement, Declaration,

3. COURT:                    Superior Court of California, County of Alameda
                             Case Number 8018821

4. NATURE OF ACTION:         Complaint for alleged damage for fraud, violation of California Civil Code.  Also
                             seeks that defendants be preliminarily and permanently enjoined from engaging
                             in the unlawful, unfair and fraudulent acts and practices alleged.

5. ON WHOM PROCESS WAS SERVED:   CT Corporation System, Los Angeles, California

6. DATE AND HOUR OF SERVICE:     By Process server on 08/24/1998 at 09:40

7. APPEARANCE OR ANSWER DUE:     Within 30 days

8. ATTORNEY(S):     James C. Sturdevant
                    The Sturdevant Law Firm
                    (415) 477-2410
                    475 Sansome Street, Suite 1750
                    San Francisco, Ca  94111

9. REMARKS:     Name discrepancy noted.

SIGNED     CT Corporation System

PER        Jere Keprios /RD
ADDRESS    818 West Seventh Street
           Los Angeles, CA  90017
           SOP WS 0001969210

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to
permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount
of damages, the answer date, or any information that can be obtained from the documents themselves.  The recipient is
responsible for interpreting the documents and for taking the appropriate action.

BOFA MOFO 018474

# SUMMONS
## (CITACION JUDICIAL)

1-11

**NOTICE TO DEFENDANT:** *(Aviso a Acusado)*

BANK OF AMERICA, N.T. & S.A., a California corporation, and DOES 1-50,

AUG 24 1998

**YOU ARE BEING SUED BY PLAINTIFF:**
*(A Ud. le está demandando)*

PAUL MILLER, individually and on behalf of others similarly situated,

| | |
|---|---|
| You have **30 CALENDAR DAYS** after this summons is served on you to file a typewritten response at this court. | *Después de que le entreguen esta citación judicial usted tiene un plazo de 30 DIAS CALENDARIOS para presentar una respuesta escrita a máquina en esta corte.* |
| A letter or phone call will not protect you; your typewritten response must be in proper legal form if you want the court to hear your case. | *Una carta o una llamada telefónica no le ofrecerá protección; su respuesta escrita a máquina tiene que cumplir con las formalidades legales apropiadas si usted quiere que la corte escuche su caso.* |
| If you do not file your response on time, you may lose the case, and your wages, money and property may be taken without further warning from the court. | *Si usted no presenta su respuesta a tiempo, puede perder el caso, y le pueden quitar su salario, su dinero y otras cosas de su propiedad sin aviso adicional por parte de la corte.* |
| There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book). | *Existen otros requisitos legales. Puede que usted quiera llamar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de referencia de abogados o a una oficina de ayuda legal (vea el directorio telefónico).* |

The name and address of the court is: *(El nombre y dirección de la corte es)*

ALAMEDA COUNTY SUPERIOR COURT
1225 Fallon Street
Oakland, CA 94612

CASE NUMBER: *(Número del Caso)*

**801882-1**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es)*

James C. Sturdevant   (SBN 94551)
THE STURDEVANT LAW FIRM          (415) 477-2410
475 Sansome Street, Suite 1750
San Francisco, CA  94111

DATE: AUG 1 3 1998     RONALD G. OVERHOLT-EXEC. OFF./CLERK     Clerk, by _Darothy Duckett_ , Deputy
*(Fecha)*                                                     *(Actuario)*                              *(Delegado)*

[SEAL]
SUPERIOR COURT ALAMEDA COUNTY CALIFORNIA

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:
3. ☒ on behalf of *(specify)*:  BANK OF AMERICA, N.T. & S.A., a California corporation, and DOES 1-50

   under: ☒ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)         ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (individual)
   ☐ other:
4. ☐ by personal delivery on *(date)*:

Form Adopted by Rule 982
Judicial Council of California
982(a)(9) (Rev. January 1, 1984)

*(See reverse for Proof of Service)*
**SUMMONS**

CCP 412.20

BOFA_MOFO_018475

1-12

## PROOF OF SERVICE — SUMMONS
*(Use separate proof of service for each person served)*

1. I served the
   a. ☐ summons ☐ complaint ☐ amended summons ☐ amended complaint
      ☐ completed and blank Case Questionnaires ☐ Other *(specify):*
   b. on defendant *(name):*

   c. by serving ☐ defendant ☐ other *(name and title or relationship to person served):*

   d. ☐ by delivery ☐ at home ☐ at business
      (1) date:
      (2) time:
      (3) address:

   e. ☐ by mailing
      (1) date:
      (2) place:

2. Manner of service *(check proper box):*
   a. ☐ Personal service. By personally delivering copies. (CCP 415.10)
   b. ☐ Substituted service on corporation, unincorporated association (including partnership), or public entity. By leaving, during usual office hours, copies in the office of the person served with the person who apparently was in charge and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP 415.20(a))
   c. ☐ Substituted service on natural person, minor, conservatee, or candidate. By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of the office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left. (CCP 415.20(b)) *(Attach separate declaration or affidavit stating acts relied on to establish reasonable diligence in first attempting personal service.)*
   d. ☐ Mail and acknowledgment service. By mailing (by first-class mail or airmail, postage prepaid) copies to the person served, together with two copies of the form of notice and acknowledgment and a return envelope, postage prepaid, addressed to the sender. (CCP 415.30) *(Attach completed acknowledgment of receipt.)*
   e. ☐ Certified or registered mail service. By mailing to an address outside California (by first-class mail, postage prepaid, requiring a return receipt) copies to the person served. (CCP 415.40) *(Attach signed return receipt or other evidence of actual delivery to the person served.)*
   f. ☐ Other *(specify code section):*
      ☐ additional page is attached.

3. The "Notice to the Person Served" (on the summons) was completed as follows (CCP 412.30, 415.10, and 474):
   a. ☐ as an individual defendant.
   b. ☐ as the person sued under the fictitious name of *(specify):*
   c. ☐ on behalf of *(specify):*
      under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor) ☐ other:
             ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
             ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (individual)
   d. ☐ by personal delivery on *(date):*

4. At the time of service I was at least 18 years of age and not a party to this action.

5. Fee for service: $

6. Person serving:
   a. ☐ California sheriff, marshal, or constable.
   b. ☐ Registered California process server.
   c. ☐ Employee or independent contractor of a registered California process server.
   d. ☐ Not a registered California process server.
   e. ☐ Exempt from registration under Bus. & Prof. Code 22350(b).

   f. Name, address and telephone number and, if applicable, county of registration and number:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

▶ _____
            (SIGNATURE)

*(For California sheriff, marshal, or constable use only)*
I certify that the foregoing is true and correct.

Date:

▶ _____
            (SIGNATURE)

982(a)(9) [Rev. January 1, 1984]

**ENDORSED**
**FILED**
ALAMEDA COUNTY

AUG 1 3 1998

RONALD G. OVERHOLT, Exec. Off./Clerk
By Dorothy Duckett

1 | JAMES C. STURDEVANT (SBN 94551)
JACK P. HUG (SBN 39168)
2 | MARK T. JOHNSON (SBN 76904)
THE STURDEVANT LAW FIRM
3 | 475 Sansome Street, Suite 1750
San Francisco, California 94111
4 | (415) 477-2410

5 | Attorneys for Plaintiff PAUL MILLER

6

7 |     IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

8 |         IN AND FOR THE COUNTY OF ALAMEDA

9

10 | PAUL MILLER, individually and on behalf     ) CASE NO. 801882-1
of others similarly situated,                )
11 |                                            ) CLASS ACTION
Plaintiff,                                     )
12 |                                            ) COMPLAINT FOR FRAUD;
vs.                                            ) VIOLATION OF CODE OF CIVIL
13 |                                            ) PROCEDURE § 704.080;
BANK OF AMERICA N.T. & S.A.                    ) VIOLATION OF CODE OF CIVIL
14 | a California corporation, and DOES 1 - 50, ) PROCEDURE § 1750 et seq.;
                                               ) INTENTIONAL INFLICTION OF
15 |          Defendants.                       ) EMOTIONAL DISTRESS;
                                               ) VIOLATION OF BUSINESS AND
16 | _____       ) PROFESSIONS CODE § 17200 et
                                                 seq.; VIOLATION OF BUSINESS
17 |                                              AND PROFESSIONS CODE §
                                                 17500.
18 |
                                                 JURY TRIAL DEMANDED
19 |
                                                 Type of Case: Unfair Business
20 |                                              Practices

21

22 |              **INTRODUCTION**

23 |        Plaintiff PAUL MILLER, by his attorneys, brings this action on behalf of

24 | himself and a class of similarly-situated persons to challenge defendant's unlawful

25 | and unfair practice of debiting Social Security direct deposit accounts for amounts

26 | protected from levy by law, and assessing unfair and unconscionable overdraft and

27 | return item fees from Social Security Direct Deposit accounts.  Plaintiff seeks

28 | compensatory and punitive damages, restitution, declaratory and injunctive relief,

1

1   and attorneys' fees, costs and expenses.

2

3                                    **PARTIES**

4        1.    Plaintiff PAUL MILLER ("MILLER") is an individual, residing at all

5   relevant times in the City and County of San Francisco, California. Plaintiff is a

6   consumer who has a Social Security Direct Deposit Account with defendant WELLS

7   FARGO BANK. At all times material herein, Plaintiff MILLER's Social Security

8   payments from the U.S. government were directly deposited into his account with

9   defendant BANK OF AMERICA once each month. Defendant BANK OF AMERICA

10  has repeatedly levied upon plaintiff MILLER's Social Security Direct Deposit account

11  for debts allegedly owed to BANK OF AMERICA by MILLER, although BANK OF

12  AMERICA erroneously credited MILLER' account with funds that it later attempted

13  to collect, and BANK OF AMERICA is prohibited by law from levying upon Social

14  Security Direct Deposit funds.  BANK OF AMERICA has imposed service charges on

15  MILLER's account as a result of these improper levies and overdrafts resulting

16  therefrom.

17       2.    At all material times, defendant BANK OF AMERICA N.T.S.A. ("BANK OF

18  AMERICA") was, and is, a California corporation, with its principal place of

19  business in San Francisco, California.  BANK OF AMERICA is engaged in a

20  nationwide business of marketing and providing banking and other financial

21  services, including Social Security Direct Deposit Accounts.  BANK OF AMERICA

22  has offices throughout California, including in Alameda County.  BANK OF

23  AMERICA affirmatively solicits Social Security Direct Deposit customers residing in

24  the State of California, and provides services to and collects payments from such

25  customers.

26       3    Plaintiff is ignorant of the true names and capacities of defendants

27  sued herein as DOES 1-50, and therefore sues these defendants by such fictitious

28  names. Plaintiff will amend his complaint to state the true names and capacities

                                                                              2

1  when ascertained. Plaintiff is informed and believes that each of the fictitiously

2  named defendants is responsible in some manner for the occurrences and damages

3  alleged herein, and that plaintiff's damages as hereinafter set forth were

4  proximately caused by said defendants.

5      4.      Plaintiff is informed and believes and thereon alleges that each of the

6  defendants acted in concert with each and every other defendant, intended to and

7  did participate in the events, acts, practices and courses of conduct alleged herein,

8  and was a proximate cause of damage and injury thereby to plaintiff as alleged

9  herein.

10      5.      At all times herein mentioned, each defendant was the agent or

11  employee of each of the other defendants and was acting within the course and

12  scope of such agency or employment.

13

14              **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

15      6.      In 1994, MILLER began receiving benefit payments from the Social

16  Security Administration in the form of Social Security Disability Income and

17  Supplemental Security Income (hereinafter collectively referred to as "SSI").

18  Individuals qualify for such benefit payments when they are permanently disabled

19  and are unable to remain gainfully employed as a result of an ongoing physical or

20  mental impairment.  MILLER was physically assaulted in or around 1989 and

21  suffered brain damage as a result of the assault.  MILLER's sole source of income is

22  his social security benefits, which he receives in the total amount of $670.40 per

23  month.  MILLER resides in a rent controlled apartment for which he pays

24  approximately $530.00 per month in rent.

25      7.      Plaintiff receives SSI benefits because of head injuries he received

26  during a violent assault in 1989, resulting in brain damage.  As a result, he suffers

27  from recurrent depression, insomnia and other symptoms for which he takes

28  medication on a regular basis for which he is under the care of a physician, and

3

1 sees a psychiatric counselor on a regular basis.

2      8.    In 1994, when he first began receiving SSI, MILLER established a

3 Social Security Direct Deposit account with BANK OF AMERICA. Through May 14,

4 1998, MILLER paid a monthly service charge of approximately $2.50 to maintain

5 this account. Plaintiff elected to have his Social Security benefits directly deposited

6 into his account because of the safety, security and convenience of that procedure.

7 He believed that he would not have to wait to receive the check in the mail land

8 then go to the bank to deposit it. He also believed that the check would never get

9 lost or stolen as it could have been if delivered by regular mail.

10      9.    BANK OF AMERICA knew at all times relevant herein that MILLER

11 received Social Security in the form of SSI payments.

12      10.   On or about January 30, 1998, BANK OF AMERICA, through no fault

13 of MILLER, erroneously credited MILLER's account with an amount of $1,799.83.

14 This erroneous credit or deposit was made on the same date on which MILLER's

15 regular monthly SSI payment was deposited. The erroneous deposit was assumed

16 by MILLER to be a retroactive lump sum payment from the Social Security

17 Administration for a possible underpayment during previous months.

18      11.   Without prior notice on or about April 16, 1998, BANK OF AMERICA

19 reversed the $1,799.83 entry in MILLER's account. Plaintiff did not read or see any

20 Debit Adjustment Notice concerning this transaction prior to May 3, 1998.

21      12.   On or about May 1, 1998, Plaintiff's May Social Security benefits

22 totaling $670.40 were deposited into the account. Unknown to Plaintiff, the

23 account then still had a negative balance because of the April levy by BANK OF

24 AMERICA.

25      13.   On or about May 3, 1998, Plaintiff learned through BANK OF

26 AMERICA's automated telephone system that his account was overdrawn by an

27 amount in excess of $1500.00. He immediately sought assistance from Bank of

28 America representatives. Plaintiff is informed and believes and thereon alleges that

4

1  BANK OF AMERICA personnel at his servicing branch told him that he needed to

2  find a source of funds to repay BANK OF AMERICA, and suggested that he apply

3  for a credit card.

4       14.  On or about May 6, 1998, after an attorney had spoken with BANK OF

5  AMERICA's legal department on his behalf, Plaintiff was advised that BANK OF

6  AMERICA had agreed to release his May Social Security benefits.  Plaintiff is

7  informed and believes and thereon alleges that he was told by personnel at his

8  servicing BANK OF AMERICA branch that a new account could be opened and his

9  Social Security benefits could be placed in the new account.  A new VERSATEL

10  checking amount, Number 21987-02761, was opened and the $670.40 Social

11  Security benefits for May that had been levied by BANK OF AMERICA earlier were

12  placed in the account.  Plaintiff is informed and believes and thereon alleges that he

13  was told by BANK OF AMERICA personnel that money would not be taken from the

14  new account to pay the debt on the old account.

15       15.  Despite BANK OF AMERICA's promises, in June, 1998, BANK OF

16  AMERICA levied upon Plaintiff's new account to satisfy its own claim against him.

17  Once again, after an attorney intervened, the funds were returned to Plaintiff's

18  account.  Plaintiff was caused considerable inconvenience and hardship, as well as

19  financial difficulties, because of defendant's actions.

20       16.  For a third consecutive month, in July, 1998, BANK OF AMERICA levied

21  upon Plaintiff's new account to pay the debt on the old account.  After an attorney

22  again intervened, the funds were returned to the new account.  Plaintiff's rent

23  check was returned unpaid for lack of funds.  Had had BANK OF AMERICA not

24  continued its unlawful levies upon Plaintiff's Social Security Direct Deposit funds,

25  there would have been sufficient funds in the account to cover the rent check.

26  After the intervention of an attorney, the rent check was paid.  Plaintiff is informed

27  and believes and thereon alleges that he was told by BANK OF AMERICA personnel

28  that his Social Security funds would probably continue to be seized by the bank's

5

1    collection system without notice in future months, so long as the debt remained

2    unpaid.

3         17.    Pursuant to Title 31, United States Code, section 3332, since 1995

4    Federal wage, salary, and retirement payments have been paid to authorized

5    recipients by direct deposit electronic funds transfer, with certain exceptions.

6    Effective January 1, 1999, all Federal payments shall be made by direct deposit

7    electronic funds transfer, unless waiver is granted by the Secretary of the Treasury.

8    Electronic funds transfer direct deposits thus have become, and will continue to be,

9    a lucrative source of income for banks and other financial institutions, including

10   without limitation BANK OF AMERICA, because of the large number of recipients of

11   Federal wages, salaries, retirement benefits and other benefits and payments.

12   Plaintiff is informed and believes and thereon alleges that this revenue stream is a

13   significant incentive to BANK OF AMERICA to keep direct deposit accounts open

14   despite overdraft and return activity that would otherwise warrant closing the

15   accounts and to continue to levy charges upon the accounts for unpaid debts.

16   BANK OF AMERICA has the power to close accounts without notice if, in the

17   discretion of BANK OF AMERICA, overdraft and return activity or outstanding

18   obligations warrant such action.

19        18.    Plaintiff is informed and believes and thereon alleges that BANK OF

20   AMERICA has established thousands of direct deposit accounts for recipients

21   Government benefits, including but not limited to Social Security benefits.   BANK

22   OF AMERICA charges and collects substantial service fees for each of these

23   accounts.

24        19.    Plaintiff is informed and believes and thereon alleges that many of the

25   recipients of Government benefits who have direct deposit accounts with BANK OF

26   AMERICA for such benefits are Senior citizens, as defined by California Civil Code §

27   1761 (f) and California Business and Professions Code § 17206.1 (b) (1) and/or

28   disabled persons, as defined by California Civil Code § 1761 (g) and California

6

1  Business and Professions Code § 17206 (b) (2).  Plaintiff is further informed and

2  believes and thereon alleges that BANK OF AMERICA, through advertising,

3  brochures and other promotional materials, has represented to its direct deposit

4  customers and applicants for such accounts that its direct deposit accounts are

5  safe and secure and that direct deposit is the safest and most reliable way to

6  deposit pension or annuity checks, among others.   Plaintiff is further informed and

7  believes and thereon alleges that many of the BANK OF AMERICA customers who

8  own, maintain and use Government benefit direct deposit accounts are unable,

9  through age, infirmity and/or lack of understanding are unable fully to comprehend

10  the nature and extent of charges, including but not limited to substantial recurring

11  and escalating overdraft and return charges, and unauthorized levies, and other

12  adverse consequences that could be and/or have been imposed upon direct deposit

13  account holders by BANK OF AMERICA.

14      20.  As a result of the practices described above, plaintiff PAUL MILLER and

15  other BANK OF AMERICA customers have been damaged in that BANK OF

16  AMERICA has knowingly and willfully debited their Government benefit direct

17  deposit accounts for levies that are unconscionable and contrary to statute and

18  therefore unlawful, and have further been damaged in that they have been deprived

19  of access to the funds in their accounts and thus have been unable to purchase the

20  goods and services for which Government benefits are provided.

21

22              **CLASS ACTION ALLEGATIONS**

23      21.   Pursuant to California Code of Civil Procedure § 382 and California

24  Civil Code § 1781, plaintiff brings this action on behalf of himself and all other

25  persons similarly situated.  The class that plaintiff represents (hereinafter the

26  "Plaintiff Class") is composed of all California residents who have or have had a

27  BANK OF AMERICA Government benefits direct deposit account at any time within

28  four years preceding the filing of this lawsuit.  A subclass of the Plaintiff Class

7

1  (hereinafter the "Subclass") is composed of all members of the Plaintiff Class who

2  are Senior citizens as defined by California Civil Code § 1761 (f) and California

3  Business and Professions Code § 17206.1 (b) (1) and/or disabled persons as

4  defined by California Civil Code § 1761 (g) and California Business and Professions

5  Code § 17206 (b) (2). Plaintiff and the Plaintiff Class, including the subclass, are

6  hereinafter referred to jointly as "plaintiffs."

7          22.    Plaintiffs are unable to state the precise number of potential members

8  of the Plaintiff Class because that information is in the possession of defendant

9  BANK OF AMERICA. Plaintiffs are informed and believe and thereon allege that the

10  Plaintiff Class numbers at least in the tens of thousands and is so numerous that

11  joinder of all members would be impracticable. The exact size of the Plaintiff Class,

12  and the subclass, and the identity of the members thereof, would be readily

13  ascertainable from the business records of BANK OF AMERICA.

14          23.    Questions of law and fact common to the Plaintiff Class exist that

15  predominate over questions affecting only individual members, including, *inter alia,*

16  the following:

17          a. Whether BANK OF AMERICA has knowingly and willfully, and/or

18  negligently, deducted from the Government benefit accounts of the Plaintiff Class

19  charges that are unconscionable and therefore unlawful;

20          b. Whether the actions of BANK OF AMERICA as hereinabove

21  described violated California Code of Civil Procedure § 704.080;

22          c. Whether the actions of BANK OF AMERICA as hereinabove

23  described violated the Consumer Legal Remedies Act, California Civil Code § 1750

24  et seq.

25          d. Whether the actions of BANK OF AMERICA as hereinabove

26  described were fraudulent;

27          e. Whether plaintiff and the other members of the Plaintiff Class were

28  injured in their business or property by reason of the unlawful, unfair and/or

8

1  fraudulent conduct of BANK OF AMERICA and the class-wide measure of damages;

2        f.  Whether plaintiff and the other members of the Plaintiff Class are

3  entitled to injunctive relief and restitution.

4       24.  The claims asserted by plaintiff MILLER in this action are typical of

5  the claims of the members of the Plaintiff Class as described above, the claims

6  arise from the same course of conduct by BANK OF AMERICA, and the relief

7  sought is common.

8       25.  Plaintiff MILLER will fairly and adequately represent and protect the

9  interests of the members of the Plaintiff Class. Plaintiffs have retained counsel

10  competent and experienced in both consumer protection and class action litigation.

11       26.  A class action is superior to other methods for the fair and efficient

12  adjudication of this controversy, since joinder of all members is impracticable.

13  Furthermore, because the economic damages suffered by the individual class

14  members may be relatively modest, albeit significant, compared to the expense and

15  burden of individual litigation, it would be impracticable for most Plaintiff Class

16  members to seek redress individually for the wrongful conduct alleged herein.

17  There will be no real difficulty in the management of this litigation as a class action.

18

19  **FIRST CAUSE OF ACTION FOR DAMAGES AND PUNITIVE DAMAGES**

20  **(Violation of California Civil Code §§ 1709, 1710 (Fraud) Asserted on Behalf of**

21  **Plaintiff and the Plaintiff Class)**

22       27.  Plaintiffs reallege and incorporate herein by reference the allegations

23  set forth in paragraphs 1 through 26 above as if fully alleged herein.

24       28.  At all times herein mentioned, defendant BANK OF AMERICA was in

25  the business of providing banking services, including but not limited to bank deposit

26  accounts, to the general public.  Among the accounts provided were accounts into

27  which direct deposits of Government benefits could be and were made.

28       29.  At all times herein mentioned, BANK OF AMERICA represented to the

9

1    public through brochures, advertisements, and other means that their direct deposit

2    accounts were safe and secure.  BANK OF AMERICA further represented to the

3    public that direct deposit is the safest, most reliable way to deposit annuity,

4    pension or retirement checks, including but not limited to Social Security benefits

5    and Veterans' benefits.

6       30.    BANK OF AMERICA's representations concerning safety and security

7    were untrue in that at all times material herein BANK OF AMERICA imposed

8    unexpected and unlawful levies, in violation of Californian Code of Civil Procedure §

9    704.080 upon its direct deposit account holders, rendering the direct deposit

10   accounts unsafe and insecure.

11      31.    BANK OF AMERICA made the representations herein alleged with the

12   intention of inducing the public, including but not limited to plaintiffs, to purchase,

13   maintain, and use BANK OF AMERICA's direct deposit accounts.

14      32.    Plaintiffs were aware of BANK OF AMERICA's representations herein

15   alleged and relied on them in purchasing and maintaining their direct deposit

16   Government benefit accounts with BANK OF AMERICA.

17      33.    At the time BANK OF AMERICA made the representations herein

18   alleged, BANK OF AMERICA knew that the representations were false.

19      34.    BANK OF AMERICA made the representations herein alleged with the

20   intention of depriving plaintiffs of property or legal rights, to wit: the use of some

21   or all of their direct deposit Government benefits, or otherwise causing injury, and

22   was guilty of fraud.

23      35.    As a proximate result of BANK OF AMERICA's intentional

24   misrepresentations, plaintiffs were damaged by suffering the loss of some of their

25   Government benefits and by being unable to acquire, possess, and use the goods

26   and services ordinarily paid for by their Government benefits, in an amount to be

27   proved at trial.

28      36.    The wrongful conduct of BANK OF AMERICA, as herein alleged, was

10

1  intentional and was done with malicious, oppressive or fraudulent intent.  Plaintiffs

2  are therefore entitled to recover punitive damages.

3

4              **SECOND CAUSE OF ACTION FOR DAMAGES**

5    **(Violation of California Civil Code §§ 1709, 1710 (Negligent Misrepresentation)**

6              **Asserted on Behalf of Plaintiff and the Plaintiff Class)**

7        37.    Plaintiffs reallege and incorporate herein by reference the allegations

8  set forth in paragraphs 1 through 32 above as if fully alleged herein.

9        38.    At the time BANK OF AMERICA made the misrepresentations herein

10  alleged, BANK OF AMERICA had no reasonable grounds for believing the

11  representations to be true.

12        39.    As a proximate result of BANK OF AMERICA's negligent

13  misrepresentations, plaintiffs were damaged by suffering the loss of some of their

14  Government benefits and by being unable to acquire, possess, and use the goods

15  and services ordinarily paid for by their Government benefits, in an amount to be

16  proved at trial.

17

18        **THIRD CAUSE OF ACTION FOR DAMAGES AND PUNITIVE DAMAGES**

19              **(Violation of Code of Civil Procedure §704.080;**

20              **Asserted on behalf of Plaintiff and the Plaintiff Class)**

21        40.    Plaintiffs reallege and incorporate herein by reference the allegations

22  set forth in paragraphs 1 through 39 above as if fully alleged herein.

23        41.    California Code of Civil Procedure § 704.080 provides that Social

24  Security payments that are directly deposited by the U.S. government into a bank

25  account are exempt from levy, regardless of the amount of the deposit. The statute

26  further establishes that Social Security Direct Deposit accounts are exempt from

27  levy, without the consumer having to make a claim of exemption, for amounts up

28  to $2,000 for a single depositor account and for amounts up to $3,000 for an

11

1   account with two or more depositors.

2   42.    California Code of Civil Procedure § 704.080(d) also specifically

3   requires a financial institution that holds a Social Security Direct Deposit account to

4   follow certain procedures when processing a levy such that no exempt funds are

5   seized.

6   43.    Defendant BANK OF AMERICA has engaged and is continuing to

7   engage in a business practice of unlawfully debiting accounts of Social Security

8   Direct Deposit account holders for amounts sought through levy by alleged

9   creditors including, without limitation, defendant BANK OF AMERICA and assessing

10  service fees for the processing of such levies. Such practices violate California

11  Code of Civil Procedure § 704.080 in that Social Security Direct Deposit funds are

12  exempt from levy.

13  44.    Defendants' violation of Code of Civil Procedure § 704.080

14  constitutes a tort in that it is a breach of a non-consensual duty owed to another.

15  Code of Civil Procedure §704.080 was enacted for the protection of plaintiffs and

16  embodies a public policy that Social Security Direct Deposit accounts shall not be

17  subject to levy. Accordingly, defendant's violation of said statute constitutes a tort

18  and defendants are therefore liable for all damages suffered by plaintiffs.

19  45.    As a result of defendants' unlawful practice, plaintiffs were denied

20  funds to which they are statutorily entitled and were charged improper service fees,

21  and have suffered substantial damages, including without limitation, monetary

22  losses.

23  46.    Defendants have engaged in the aforementioned conduct willfully and

24  for the specific purpose of denying plaintiffs rightful access to the funds in their

25  accounts and collecting substantial bank service fees. Defendants have thus acted

26  with oppression and malice in that they have deliberately engaged in conduct that

27  has subjected plaintiffs and members of the plaintiff class to cruel and unjust

28  hardship in conscious disregard of such individual's statutory rights; and have

12

1   carried out such conduct with a willful and conscious disregard of the rights of

2   plaintiffs. Accordingly, plaintiffs are entitled to an award of punitive damages

3   according to proof at the time of trial.

4

5                    **FOURTH CAUSE OF ACTION FOR INJUNCTIVE RELIEF**

6        **(Violation of the Consumer Legal Remedies Act, California Civil Code § 1750, et**

7                    **seq., Asserted on Behalf of Plaintiff and the Plaintiff Class)**

8        47.    Plaintiffs reallege and incorporate herein by reference the allegations

9   set forth in paragraphs 1 through 46 above as if fully alleged herein.

10       48.    The Consumer Legal Remedies Act, California Civil Code § 1750, et

11  seq. (hereinafter "the CLRA"), was designed to protect consumers from unfair and

12  deceptive business practices.  To this end, the CLRA sets forth a list of unfair and

13  deceptive acts and practices  that are specifically prohibited in any transaction

14  intended to result in the sale or lease of goods or services to a consumer.  Cal. Civil

15  Code § 1770.  Defendant BANK OF AMERICA's acts and practices, as hereinabove

16  described, violate the following provisions of the CLRA, without limitation:

17       a. § 1770 (a) (5) in that BANK OF AMERICA represented that the

18  services (direct deposit accounts) have characteristics, uses, benefits or quantities

19  which they do not have, to wit: safety and security;

20       b. § 1770 (a) (7) in that BANK OF AMERICA represented that the

21  services (direct deposit accounts) are of a particular standard and quality of safety

22  and security that the accounts did not possess;

23       c. § 1770 (a) (13) in that BANK OF AMERICA made false and

24  misleading statements concerning the safety and security of its direct deposit

25  accounts;

26       d. § 1770 (a) (14) in that BANK OF AMERICA represented that the

27  banking transactions arising out of its direct deposit accounts conferred rights and

28  remedies which they did not have or which are prohibited by law;

13

BOFA MOFO 018489

1        e. § 1770 (a) (19) in that BANK OF AMERICA inserted unconscionable

2    provisions in the contract for the provision of direct deposit accounts for

3    Government benefits concerning assessment and collection of fees for overdrafts

4    and return items.

5        49.    As a result of the unfair and deceptive acts and practices of BANK OF

6    AMERICA hereinabove described, plaintiff PAUL MILLER and members of the

7    Plaintiff Class have suffered substantial economic losses in an amount to be proven

8    at trial.

9        50.    Pursuant to California Civil Code §§ 1780 and 1781, plaintiff and the

10   Plaintiff Class hereby request certification of the Plaintiff Class, injunctive relief,

11   restitution and attorneys' fees, costs and expenses pursuant to California Civil Code

12   § 1780 (d) and California Code of Civil Procedure § 1021.5.

13   **FIFTH CAUSE OF ACTION FOR DAMAGE AND PUNITIVE DAMAGES**

14                  **(Intentional Infliction of Emotional Distress;**

15                       **Asserted on Behalf of Plaintiff)**

16       51.    Plaintiff realleges and incorporates herein by reference the allegations set

17   forth in paragraphs 1 through 20 and 27 through 50 as if fully alleged herein.

18       52.    Defendants knew at all relevant times that debiting a Social Security

19   Direct Deposit account pursuant to a levy and collecting substantial bank service fees

20   for processing such levy, were contrary to the law and policy of the State of

21   California, and in violation of the statutory rights of the plaintiff.  Defendants further

22   knew that plaintiff had limited income and that such acts would cause him

23   considerable hardship and emotional distress. Nevertheless, defendants committed

24   such acts deliberately and repeatedly, and with conscious disregard for the rights of

25   the plaintiff.

26       53.    As a result of defendants' acts as hereinabove described, plaintiff MILLER

27   has suffered severe emotional distress, including without limitation, anger, stress,

28   worry, anxiety, humiliation, fear, depression, fatigue and frustration.

14

1    54.   Defendants committed the above-described wrongful and intentional acts

2   because they felt confident in their position of wealth, sophistication and power, and

3   in their ability to manipulate plaintiff and to coerce him into relinquishing rights

4   guaranteed to them by law. Defendants deliberately, willfully and maliciously pursued

5   this course of conduct because they had no fear that the plaintiff would understand

6   the nature of the transactions and/or be able to assert his legal rights.  Defendants

7   have thus acted with oppression and malice in that they have engaged in despicable

8   conduct, intended to cause cruel and unjust hardship to plaintiff, and have carried out

9   such conduct with a willful and conscious disregard of the rights of plaintiff.

10  Accordingly, plaintiff seeks and is entitled to awards of compensatory and punitive

11  damages according to proof at the time of trial.

12

13  **SIXTH CAUSE OF ACTION FOR RESTITUTION AND INJUNCTIVE RELIEF**

14  **(Violation of California Business and Professions Code § 17200, et seq.,**

15  **Asserted on Behalf of Plaintiffs and All Affected Members of the General Public)**

16    55.   Plaintiffs reallege and incorporate herein by reference the allegations

17  set forth in paragraphs 1 through 20 and 27 through 50 above as if fully alleged

18  herein.

19    56.   Plaintiffs bring this cause of action acting as a private attorney general

20  on behalf of the public challenge defendant's business practices.  California

21  Business and Professions Code § 17200, The Unfair Competition Law ("UCL"),

22  defines unfair competition to include any unlawful, unfair or fraudulent business act

23  or practice.  The UCL provides that a Court may order injunctive relief and

24  restitution to affected members of the general public as remedies for any violation

25  of the Act.

26    57.   The business acts and practices of defendant BANK OF AMERICA, as

27  hereinabove and hereinafter described, constitute an unlawful business practice in

28  violation of the UCL  for the reasons set forth below, without limitation:

15

1              a. The acts and practices violate California Civil Code §§ 1709 and

2  1710 for the reasons set forth in the First and Second Causes of Action, and are

3  therefore unlawful;

4              b. The acts and practices violate California Civil Code § 1750, et

5  seq., for the reasons set forth in the Fourth Cause of Action and are therefore

6  unlawful.

7              c. The acts and practices constitute violate California Business and

8  Professions Code § 17500 for the reasons set forth in the Seventh Cause of Action

9  and are therefore unlawful.

10      58.    The business acts and practices of defendant BANK OF AMERICA as

11  hereinabove described also constitute an unfair business practice in violation of the

12  UCL in that such acts and practices are substantially injurious to consumers and

13  offensive to established California public policy.

14      59.    In addition, the business acts and practices of defendant BANK OF

15  AMERICA as hereinabove described constitute a fraudulent business practice in

16  violation of the UCL in that such acts and practices are likely to deceive California

17  consumers as to their legal rights and obligations with respect to protection from

18  levies on their Government benefit direct deposit accounts and protection from the

19  consequences of excessive overdrafts.

20      60.    Pursuant to California Business and Professions Code §17203

21  plaintiffs seek to enjoin these acts and practices and to obtain restitution of all

22  funds seized from plaintiffs by reason of and through the use of such unlawful,

23  unfair and fraudulent acts and practices. Pursuant to California Business and

24  Professions Code §17203, plaintiff, individually, and on behalf of all members of

25  the general public who are, have been or may be, subjected to these unlawful,

26  unfair, and fraudulent business acts and practices of defendants, hereby requests

27  preliminary and permanent injunctive relief prohibiting such practices in the future,

28  and such other orders as may be necessary to restore to any person in interest, any

16

1   money or property, real or personal, which may have been seized from plaintiffs by

2   means of such unlawful, unfair and fraudulent business practices, and to disgorge

3   all profits defendants have earned thereby. In addition, pursuant to California Code

4   of Civil Procedure § 1021.5, plaintiffs are entitled to recover their reasonable

5   attorney's fees, costs and expenses incurred in bringing this action.

6

7   **SEVENTH CAUSE OF ACTION FOR RESTITUTION AND INJUNCTIVE RELIEF**

8   **(Violation of California Business and Professions Code § 17500, et seq.;**

9   **Asserted on Behalf of Plaintiffs and All Affected Members of the General Public)**

10      61.    Plaintiffs reallege and incorporate herein by reference the allegations

11   set forth in paragraphs 1 through 20, 27 through 50 and 56 through 60 above as if

12   fully alleged herein.

13      62.    Plaintiff brings this Cause of Action acting as a private attorney

14   general on behalf of the public to challenge defendant's advertising practices.

15   California Business and Professions Code § 17500, prohibits untrue or misleading

16   advertising.  A Court may order injunctive relief and restitution to affected members

17   of the general public as remedies for any violations of Business and Professions

18   Code § 17500 as part of the UCL.

19      63.    At all times material herein defendant BANK OF AMERICA has

20   engaged in advertising to the public, including plaintiffs, and offering to the public

21   bank accounts that include a direct deposit feature ("direct deposit accounts.")  The

22   advertisements include, without limitation, brochures stating, " Bank of America's

23   Direct Deposit is a safe and convenient means to deposit your money, no matter

24   where you are.  No more trips to the bank on payday to deposit regular monthly

25   payments such as salary, pension, Social Security or Supplemental Security Income

26   (SSI) checks.  With direct deposit, your funds are electronically deposited into your

27   designated bank and are instantly available," or words to that effect.  The

28   advertisements were disseminated to and received by the public in California.

17

64. Defendant BANK OF AMERICA engaged in the advertising herein alleged with the intent to induce the public to open, maintain and use BANK OF AMERICA direct deposit accounts for their Government benefits.

65. Defendant BANK OF AMERICA's advertising was untrue or misleading and likely to deceive the public in that while BANK OF AMERICA stated and implied that direct deposit accounts were safe and secure, the aforesaid accounts were subject to excessive, escalating, recurring and unconscionable levies, overdraft and return charges, rendering the direct deposit accounts unsafe and insecure. BANK OF AMERICA continued to keep open and collect fees from direct deposit accounts with excessive overdraft activity, thereby depriving the owners of those accounts of Government benefits of access to some or all of the funds in their accounts, thus impairing their ability to purchase the goods and services for which the Government benefits were provided.

66. In making and disseminating the statements herein alleged, BANK OF AMERICA knew, or by the exercise of reasonable care should have known, that the statements were and are untrue or misleading and so acted in violation of California Business and Professions Code § 17500.

67. The business acts and practices of defendant BANK OF AMERICA as hereinabove described also constitute an unfair business practice in violation of the UCL in that such acts and practices are substantially injurious to consumers and offensive to established California public policy.

68. In addition, the business acts and practices of defendant BANK OF AMERICA as hereinabove described constitute a fraudulent business practice in violation of the UCL in that such acts and practices are likely to deceive California consumers as to their legal rights and obligations with respect to the safety and security of their Government benefit direct deposit accounts and protection from levies by BANK OF AMERICA and from the consequences of excessive overdrafts.

69. Pursuant to California Business and Professions Code §17535

18

1  plaintiffs seek to enjoin these acts and practices and to obtain restitution of all

2  funds seized from plaintiffs by reason of and through the use of such false

3  advertising. Pursuant to California Business and Professions Code § 17535, plaintiff,

4  individually, and on behalf of all members of the general public who are, have been

5  or may be, subjected to these unlawful, unfair, and fraudulent business acts and

6  practices of defendants, hereby requests preliminary and permanent injunctive relief

7  prohibiting such practices in the future, and such other orders as may be necessary

8  to restore to any person in interest, any money or property, real or personal, which

9  may have been seized from plaintiffs by means of such false advertising, and to

10  disgorge all profits defendants have earned thereby. In addition, pursuant to

11  California Code of Civil Procedure § 1021.5, plaintiffs are entitled to recover their

12  reasonable attorney's fees, costs and expenses incurred in bringing this action.

13

14                              **PRAYER FOR RELIEF**

15        WHEREFORE, plaintiffs respectfully pray as follows:

16        I.  That this Court certify this case as a class action;

17        ii.  That this Court find and declare the defendants' acts and practices as

18  described herein to be unlawful, unfair and fraudulent;

19        iii.  That plaintiffs and the Plaintiff Class be awarded compensatory damages

20  according to proof at trial;

21        iv.  That plaintiffs and the Plaintiff Class be awarded punitive damages

22  according to proof at trial;

23        v.  That the Subclass be awarded treble damages pursuant to California Civil

24  Code § 3345;

25        vi.  That defendants be preliminarily and permanently enjoined from

26  engaging in the unlawful, unfair and fraudulent acts and practices alleged herein;

27        vii.  That defendants be ordered to make restitution to all affected members

28  of the general public;

19

1    viii.  That plaintiffs be awarded attorneys' fees and expenses pursuant to

2    California Code of Civil Procedure §1021.5 and California Civil Code § 1780;

3        ix.    That plaintiffs and the Plaintiff Class be awarded pre-judgment interest

4    on all sums collected;

5        x    For costs of suit herein incurred; and

6        xi.    For such other and further relief as the Court may deem proper.

7

8    DATED: August 13, 1998              Respectfully submitted,

9

10                                       THE STURDEVANT LAW FIRM

11                                       A Professional Corporation

12

13                          By:

14                                       JAMES C. STURDEVANT

15                                       Attorneys for Plaintiff

16

17   D:\361\P-COMPL2.361

18

19

20

21

22

23

24

25

26

27

28

                                                                    20

# EXHIBIT

# C

**FILED**

San Francisco County Superior Court

MAR 4 – 2005

GORDON PARK-LI, Clerk

BY: _____
                      Deputy Clerk

IN THE SUPERIOR COURT

CITY AND COUNTY OF SAN FRANCISCO

STATE OF CALIFORNIA

| | |
|---|---|
| PAUL MILLER, individually and on behalf of others similarly situated, | ) ) ) **CASE NO. CGC-99-301917** |
| Plaintiffs, | ) ) ) **JUDGMENT** |
| vs. | ) ) ) |
| BANK OF AMERICA N.T. & S.A. a California corporation, and DOES 1 - 50, | ) ) ) ) |
| Defendants. | ) ) ) |

THE ANNEXED INSTRUMENT IS A CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE. ATTEST; CERTIFIED

MAR 4 – 2005

GORDON PARK-LI, Clerk
San Francisco County Superior Court

BY _____ DEPUTY CLERK

**Danial Lemire**

This action came on regularly for jury trial on January 20, 2004 in Department 624 of the Superior Court, the Hon. Anne Bouliane, Judge assigned to the case for all purposes, presiding. The plaintiff Paul Miller and the certified plaintiff class of similarly situated persons appeared through their counsel Thomas J. Brandi of the Brandi Law Firm and James C. Sturdevant and Mark T. Johnson of the Sturdevant Law Firm.  Defendant Bank of America, N.A., originally sued as Bank of America, N.T. & S.A., was represented by Joseph S. Genshlea of Weintraub Genshlea Chediak Sproul and by Arne D. Wagner, Arturo J. Gonzalez and Heather A. Moser of Morrison & Foerster LLP.

On January 30, 2004 a jury of 12 persons and 4 alternates was regularly impaneled and sworn to receive evidence and render a verdict on plaintiffs' causes of action for intentional and negligent misrepresentation and for violations of the Consumer Legal Remedies Act, Civil Code sections 1770(a)(5) and 1770(a)(14).   The court, sitting without a jury, received additional

1

Judgment

evidence on plaintiffs' claims under Civil Code section 1770(a)(19), the Unfair Competition Law, Business and Professions Code section 17200, *et seq.* and the False Advertising Act, Bus. & Prof. Code § 17500, *et. seq.*

Witnesses were sworn and testified. After considering the evidence and the arguments of counsel related to the issues before the jury, the jury was duly instructed by the Court and the cause was submitted to the jury with directions to return a verdict on special issues. The jury deliberated and thereafter returned to court with its special verdict, a copy of which is attached hereto as Exhibit 1 and made a part hereof.

The jury awarded damages to the class in the amount of $75,077,836.00 for amounts collected by the defendant in the form of NSF fees set off or assessed against class member accounts in violation of the law. In addition, having made the necessary findings, the jury determined that an additional statutory damage award for members of the class under Civil Code section 1780(b) was appropriate and awarded such damages in the amount of $1,000.00 for each class member who suffered substantial economic or emotional damage as a result of the defendant's conduct. The jury also awarded additional individual damages for emotional distress to plaintiff Paul Miller in the amount of $275,000.00.

Based upon its consideration of all of the testimony and evidence before it, and the arguments of counsel, the Court issued its Tentative Statement of Decision on the non-jury issues on October 13, 2004. Thereafter, the parties submitted objections and proposed changes to the Tentative Statement of Decision, together with additional materials and evidentiary submissions, and presented oral argument to the Court in support of their objections at a hearing on December 8, 2004. After considering the parties' written objections and the argument in support of those objections, the Court issued its final Statement of Decision on December 30, 2004. A copy of the Court's Statement of Decision is attached hereto as Exhibit 2 and made a part hereof.

The Court has determined, and continues to find, that all of the conditions for treatment of this case as a class action pursuant to Code of Civil Procedure §382 and Civil Code §1781 have

2

existed and continue to exist. The class was certified by the Court on October 16, 2001 and includes the following persons:

> All California residents who have, have had, or will have, at any time after August 13, 1994, a checking or savings deposit account with Bank of America into which payments of Social Security benefits or other public benefits are or have been directly deposited by the government or its agent.

Notice was given to the class during May and June, 2002 by means of an insert included with the bank statements mailed to Bank of America customers having California checking or savings accounts at that time. Following issuance of the notice and within the period permitted by the Court for opting out of the class, 3,314 persons exercised their right to exclude themselves from the class. A list of those persons is attached hereto as Exhibit 3 and is made a part hereof. All other persons satisfying the definition of the class above are members of the class to whom this judgment applies.

On February 19, 2004, at the close of the trial and approximately two years and four months after issuance of the initial order certifying the class, Bank of America moved for decertification of the class on the grounds that class treatment of the claims were inappropriate, that the class was impermissibly broad and that plaintiff Paul Miller was not an adequate class representative. On August 4, 2004, this Court, having considered the written memoranda in support of and in opposition to the motion, and having heard oral argument from the parties on several dates, denied the Bank's motion to decertify the class, finding that all of the criteria and conditions for class certification were satisfied.

Plaintiff Paul Miller and the certified plaintiff class are entitled to judgment against defendant Bank of America, N.A., originally sued as Bank of America N.T.S.A. ("the Bank"), in the amount of $284,385,741.00, collected through December 31, 2003, plus an additional $1,000.00 per class member for each class member whose account was set off or assessed an NSF fee in

3

Judgment

violation of law, and that plaintiff Paul Miller is entitled to judgment against the bank in the additional sum of $275,000.00 in emotional distress damages awarded by the jury.

**NOW THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

(1) <u>Definitions</u>:

(A) As used throughout this Judgment, "NSF (non-sufficient funds) fee(s)" means those fees which the Bank of America charges customers when a debit is posted to the account and there are insufficient funds in the account to cover the amount of the debit.

(B) As used herein, "Social Security benefits" means payments authorized by the Social Security Administration for regular retirement and survivors' benefits, supplemental security income benefits, coal miners' health benefits, and disability insurance benefits.

(C) As used herein, "public benefits" means aid payments authorized pursuant to subdivsdion (a) of section 11450 of the Welfare and Institutions Code, payments for supportive services as described in Section 11323.2 of the Welfare and Institutions Code, and general assistance payments made pursuant to Section 17000.5 of the Welfare and Institutions Code.

(2) Plaintiff and class members shall have judgment against and recover from defendant Bank of America the sum of $*295,650,220* (representing $284,385,741.00 in NSF fees unlawfully collected through December 31, 2003, interest at the legal rate of ten percent (10%) per annum on $75,077,836.00 of that sum from the date of the verdict, February 25, 2004, to the date of entry of judgment, and interest at the legal rate of 10% per annum on the balance of $209,307,905 from the date of the Court's Statement of Decision, December 30, 2004 to the date of entry of judgment), plus interest at the legal rate of 10% per annum on this total from the date of the entry of

this judgment until paid. Any unpaid residue after reasonable efforts at payment are made to the Court's satisfaction shall be paid pursuant to California Code of Civil Procedure §384.

(3) Plaintiff and class members shall have judgment against and recover from defendant Bank of America the additional amount of $1,000.00 per class member whose account was assessed an NSF fee in violation of law, with interest thereon at the rate of ten percent (10%) per annum from the date of the entry of the verdict, February 25, 2004, until paid.

(4) Plaintiff Paul Miller shall have judgment against and recover from defendant Bank of America the additional sum of $275,000.00 for emotional distress damages, with interest thereon at the rate of ten percent (10%) per annum from the date of the entry of the verdict, February 25, 2004, until paid.

(5) Bank of America shall be and is permanently enjoined as follows:

   (a)  Bank of America shall cease and refrain from making any representation or statement to California customers or potential customers, in writing or orally through its employees or representatives, that it has the right to set off or take NSF fees or other non-bank-fee money claims it has against customers from directly deposited Social Security benefits and other public benefits in customer deposit accounts in California.

   (b)  Bank of America shall cease and refrain from taking any directly deposited Social Security benefits or other public benefits from customer accounts in California to satisfy NSF fees and other monetary claims it has against customers.

(6) Bank of America shall identify, locate and repay each class member from whom it seized exempt Social Security benefits to pay itself NSF fees the full amount of those fees, plus interest at the rate of 10% per annum, and make a full report to the

5

Judgment

Court on its efforts quarterly beginning thirty (30) days following the entry of this judgment.

(7)   Bank of America shall identify, locate and repay each class member from whom it seized exempt Social Security benefits to pay itself NSF fees the additional statutory damages of $1,000.00, plus interest, and make a full report to the Court on its efforts to do so quarterly beginning thirty (30) days following the entry of this judgment.

(8)   Pursuant to Civil Code §1781(g), Bank of America is ordered to prepare and give notice of this judgment, in the same manner as the original notice, to each class member who was previously served with notice of this action.  Bank of America is further ordered to provide such notice in the same manner to those class members who did not have Bank of America checking or savings accounts at the time of the original notice but now have such.  The notice described herein shall be given on or before the date which is 30 days from the date of entry of this judgment.  The cost of notice is to be borne by Bank of America.

(9)   Enforcement of the provisions of paragraphs 5, 6, 7 and 8 of this judgment is temporarily stayed pursuant to California Code of Civil Procedure §918 for a period not exceeding 10 days beyond the last date on which a notice of appeal may be filed.

(10)  The Bank shall preserve all documents, as defined in Evidence Code § 250, that are necessary to enable it to identify, locate and repay plaintiff and class members.

(11)  The Court retains jurisdiction to determine the amount of reasonable attorneys fees and costs payable to plaintiffs and class counsel pursuant to Civil Code section 1780(d), Civil Code section 1021.5 or any other statutory or other legal basis, as well as to determine the costs to which plaintiffs are entitled from Bank of America pursuant to Code of Civil Procedure section 1032(b).  The Court further retains jurisdiction to make such other orders or rulings as are necessary to implement or

6

Judgment

enforce the terms of this judgment, including the Bank's efforts to identify, locate and pay the amounts owed to class members described in paragraphs 6 and 7, above.

(11)    Cross-defendant Paul Miller, and the Cross-defendant class, are entitled to judgment on Bank of America's cross-complaint for declaratory relief.

DATED: _March 4, 2005_ _____

Hon. Anne Bouliane
Judge of the Superior Court



7

Judgment



**EXHIBIT A**



**FILED**
San Francisco County Superior Court

FEB 2 5 2004

GORDON PARK-LI, Clerk

BY: _____
Deputy Clerk

IN THE SUPERIOR COURT
CITY AND COUNTY OF SAN FRANCISCO
STATE OF CALIFORNIA

MILLER

           Plaintiff,

  vs.

BANK OF AMERICA

           Defendant.

Case# CGC-99-301917

**V E R D I C T**



**ORIGINAL**

**VERDICT FORM**
*Miller V. Bank of America*
**San Francisco Superior Court Case No. 301917**

I. **INTENTIONAL MISREPRESENTATION**

1. Did Bank of America make a false representation of an important fact to members of the class?

   ✓ Yes          ____ No

   If your answer to question 1 is yes, then answer question 2. If you answered no, answer no further questions in Section I and go to Section II.

2. Did Bank of America know that the representation was false, or did it make the representation recklessly and without regard for its truth?

   ✓ Yes          ____ No

   If your answer to question 2 is yes, then answer question 3. If you answered no, answer no further questions in Section I and go to Section II.

3. Did Bank of America intend that members of the class rely on the representation?

   ✓ Yes          ____ No

   If your answer to question 3 is yes, then answer question 4. If you answered no, answer no further questions in Section I and go to Section II.

4. Did members of the class reasonably rely on the representation?

   ✓ Yes          ____ No

   If your answer to question 4 is yes, then answer question 5. If you answered no, answer no further questions in Section I and go to Section II.

5. Was reliance by the class on Bank of America's representations a substantial factor in causing harm to the class?

   ____ Yes          ✓ No

   If your answer to question 5 is yes, then answer question 6. If you answered no, answer no further questions in Section I and go to Section II.



6.   What are the damages to the class?

   a.   Economic loss          $ _____

## II.   NEGLIGENT MISREPRESENTATION

1.   Did Bank of America make a false representation of an important fact to members of the class?

   ✓ Yes          ____ No

   If your answer to question 1 is yes, then answer question 2.  If you answered no, answer no further questions in Section II and go to Section III.

2.   Did Bank of America have reasonable grounds for believing the representation was true when it made it?

   ____ Yes          ✓ No

   If your answer to question 2 is no then answer question 3.  If you answered yes, answer no further questions in Section II and go to Section III.

3.   Did Bank of America intend that the class rely on the representation?

   ✓ Yes          ____ No

   If your answer to question 3 is yes, then answer question 4.  If you answered no, answer no further questions in Section II and go to Section III.

4.   Did the class reasonably rely on the representation?

   ✓ Yes          ____ No

   If your answer to question 4 is yes, then answer question 5.  If you answered no, answer no further questions in Section II and go to Section III.

5.   Was reliance by the class on Bank of America's representations a substantial factor in causing harm to the class?

   ____ Yes          ✓ No

   If your answer to question 5 is yes, then answer question 6.  If you answered no, answer no further questions in Section II and go to Section III.

2



6.    What are the damages to the class?

    a.    Economic loss        $ _____

## III.    CONSUMER LEGAL REMEDIES ACT (CLRA)

1.    Did Bank of America falsely represent that its direct deposit accounts are safe and secure for holding government benefits and that the funds in those accounts are instantly available to the account holder?

    ____ Yes        ✓ No

    If your answer to question 1 is yes, then answer question 2. If you answered no, answer no further questions in Section III and go to Section IV.

2.    Did Bank of America make the representation in a transaction which was intended to result in, or actually resulted in, members of the class opening and/or maintaining a direct deposit account to hold his government benefits income?

    ____ Yes        ____ No

    If your answer to question 2 is yes, then answer question 3. If you answered no, answer no further questions in Section III and go to Section IV.

3.    What are the damages to the class?

    $ _____

4.    Did the class suffer substantial economic or emotional damage resulting from the Bank's conduct?

    ____ Yes        ____ No

    If your answer to question 4 is yes, then answer question 5. If you answered no, answer no further questions in Section III and go to Section IV.

5.    Do you find an additional award is appropriate?

    ____ Yes        ____ No

    If your answer to question 5 is yes, then answer question 6. If you answered no, answer no further questions in Section III and go to Section IV.

3

6.  What additional amount (up to $5,000 per class member who suffered substantial economic or emotional damage) do you award?

    $ _____

## IV.  CONSUMER LEGAL REMEDIES ACT

1.  Did Bank of America falsely represent that it has the right to use Social Security funds from direct deposit accounts that receive government benefits, including Social Security funds, to pay overdrafts, insufficient funds fees (NSFs), and money claims it has against class members?

    ✓ ___ Yes          ___ No

    If your answer to question 1 is yes, then answer question 2. If you answered no, answer no further questions in Section IV and go to Section V.

2.  Did Bank of America make the representation in a transaction which was intended to result in, or actually resulted in, members of the class opening and/or maintaining a direct deposit account to hold his government benefits income?

    ✓ ___ Yes          ___ No

    If your answer to question 2 is yes, then answer question 3. If you answered no, answer no further questions in Section IV and go to Section V.

3.  What are the damages to the class?

    $ _75,077,836.00_

4.  Did the class suffer substantial economic or emotional damage resulting from the Bank's conduct?

    ✓ ___ Yes          ___ No

    If your answer to question 4 is yes, then answer question 5. If you answered no, answer no further questions in Section IV and go to Section V.

5.  Do you find an additional award is appropriate?

    ✓ ___ Yes          ___ No

    If your answer to question 5 is yes, then answer question 6. If you answered no, answer no further questions in Section IV and go to Section V.

6.  What additional amount (up to $5,000 per class member who suffered substantial economic or emotional damage) do you award?

$ _1000.00_

## V.  EMOTIONAL DISTRESS DAMAGES FOR PLAINTIFF PAUL MILLER

1.  Did plaintiff Paul Miller suffer emotional distress as a result of the Bank of America's conduct?

✓ Yes        ____ No

If your answer to question 1 is yes, then answer question 2. If you answered no, answer no further questions in Section V and go to Section VI.

2.  What are plaintiff Paul Miller's damages for emotional distress?

$ _275,000.00_

## VI.  PUNITIVE DAMAGES

1.  Have plaintiffs shown by clear and convincing evidence that punitive damages should be awarded against Bank of America?

Yes _____        No ___✓_____

Have the presiding juror sign and date this form when completed.

Signed: _____
        Presiding Juror

Dated: _February 25, 2004_

5

**FILED**

San Francisco County Superior Court

MAR 4 - 2005

GORDON PARK-LI, Clerk

BY: _____ Deputy Clerk

# SUPERIOR COURT OF CALIFORNIA
## County of San Francisco

PAUL MILLER, individually and on behalf of others
similarly situated

Plaintiff(s)

vs.

BANK OF AMERICA N.T. & S.A. a California
corporation, and DOES 1-50,

Defendant(s)

Case Number: CGC-99-301917

### CERTIFICATE OF MAILING
(CCP 1013a (4) )

THE ANNEXED INSTRUMENT IS A
CORRECT COPY OF THE ORIGINAL
ON FILE IN MY OFFICE.
ATTEST: CERTIFIED

MAR 4 - 2005

GORDON PARK-LI, Clerk
San Francisco County Superior Court

BY _____ DEPUTY CLERK
Danial Lemire

I, DANIAL LEMIRE, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On March 4, 2005 I served the attached JUDGMENT by placing a copy thereof in a sealed envelope, addressed as follows:

JAMES C. STURDEVANT, Esq.
MARK JOHNSON, Esq.
The Sturdevant Law Firm
475 Sansome St., Suite 1750
San Francisco, CA 94111

ARNE D. WAGNER, Esq.
ARTURO GONZALEZ, Esq.
HEATHER MOSER, Esq.
Morrison & Foerster
425 Market St
San Francisco, CA 94105-2482

THOMAS J. BRANDI, Esq.
Law Offices of Thomas J. Brandi
44 Montgomery St., Suite 1050
San Francisco, CA 94104

JOSEPH S. GENSHLEA, Esq.
Weintraub Genshlea Chediak Sproul
400 Capitol Mall, Eleventh Floor
Sacramento, CA 95814

and, I then placed the sealed envelopes in the outgoing mail at 400 McAllister Street, San Francisco, CA. 94102 on the date indicated above for collection, attachment of required prepaid postage, and mailing on that date following standard court practices.

Dated:  March 4, 2005

GORDON PARK-LI, Clerk

By: _____
DANIAL LEMIRE, Deputy Clerk

# EXHIBIT

# D

A110137

Debra Sue Belaga
O'Melveny & Myers LLP
Embarcadero Ctr. West
275 Battery St.
San Francisco, CA 94111-3305

## NOTICE

***Please include both the appellate case number and the division number on any written communication or filing submitted to this court.***

**\*New rule effective July 1, 2006 for Civil Appeals and Writs**

\*Each party to an appeal must serve and file a Certificate of Interested Entities or Persons at the time it files its first document in this court. Each party must also include a copy of the Certificate of Interested Entities or Persons in its principal brief. The certificate must appear after the cover and before the tables. A party that learns of changed or additional information that must be disclosed must promptly serve and file a Supplemental Certificate of Interested Entities or Persons in this court. (See Cal. Rules of Court, rule 14.5.) Similar requirements apply to writ petitions. (See Cal. Rules of Court, rules 56(i), 57(c), 58(c), 59(d).)

**Our website address is
http://appellatecases.courtinfo.ca.gov**

dax

adda



Filed 11/20/06

### CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

**FILED**

NOV 2 0 2006

Court of Appeal · First App. Dist.
**DIANA HERBERT**
By————————————
DEPUTY

PAUL MILLER et al.,

    Plaintiffs and Appellants,

v.

BANK OF AMERICA, NT & SA,

    Defendant and Appellant.

A110137

(San Francisco County
Super. Ct. No. 301917)

    Does a bank act illegally if when balancing customer accounts, it applies credits for Social Security benefits and other public benefit payments directly deposited to its customers' checking accounts to cover debits for overdrafts and overdraft fees?  In *Kruger v. Wells Fargo Bank* (1974) 11 Cal.3d 352 (*Kruger*), the California Supreme Court prohibited a bank from utilizing the banker's setoff against public benefits to recover on an account holder's delinquent but separate credit card account.  In this case, the trial court applied *Kruger* to prohibit the defendant Bank of America from collecting for overdrafts and fees by debiting directly deposited Social Security and other public benefit payments.  This application of *Kruger* is an extension of its holding that is unwarranted in light of significant differences between the banker's setoff addressed in *Kruger* and the facts of this case.  Accordingly, we reverse the judgment.

### BACKGROUND

    Representative plaintiff Paul Miller receives Social Security disability benefits directly deposited into his Bank of America (the Bank) checking account.  In January 1998, the Bank mistakenly credited $1,799.83 to his account.  When the Bank discovered its error, it reversed or "charged back" the credit to Miller's account and he was substantially overdrawn.  When Miller's May 1998 Social Security payment was directly

1

deposited, it was automatically balanced against the larger overdraft to reduce his negative balance.

When Miller discovered his account balance was negative, he complained to the Bank's local branch. In response the Bank opened a new account for his Social Security benefits, while leaving the negative balance in the old account, reversed the debit against his May 1998 Social Security payment, and deposited the resulting balance into the new account. But on two later occasions, the Bank again debited Miller's Social Security benefits to reduce the negative balance in his old account. Each time, after Miller complained, the Bank reversed the debits and restored the funds to Miller's account.

Miller's first amended complaint included causes of action for intentional and negligent misrepresentation, intentional infliction of emotional distress, unlawful levy against Social Security benefit payments (Code Civ. Proc., § 704.080), and violation of the Consumer Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.), the Unfair Competition Law (UCL) (Bus. & Prof. Code, § 17200 et seq.), and the False Advertising Act (FAA) (Bus. & Prof. Code, § 17500 et seq.). The misrepresentation-based claims were based on two alleged misrepresentations by the Bank: (1) that directly deposited Social Security benefits would be safe, secure, and instantly available to account holders; and (2) that the Bank had the right to use Social Security funds from direct deposit accounts to cover overdrafts and insufficient funds (NSF) charges.

The trial court granted summary adjudication in favor of the Bank on the claims for unlawful levy and intentional infliction of emotional distress. But it denied summary judgment on the remaining causes of action, because a trial was necessary to determine "Whether [the Bank] has a practice of debiting Social Security and other government benefit direct deposit accounts to collect overdrafts, erroneous credits or other claims or debts it has against the depositor without regard to the source of the funds in the account or the fact that the account is one into which such benefits are directly deposited." The court also found there were material issues of fact regarding whether the Bank misrepresented the safety, security and accessibility of direct deposit accounts, and whether its alleged conduct was unfair or fraudulent within the meaning of the UCL.

When it ruled on summary judgment, the court also certified a plaintiff class consisting of "All California residents who have, have had or will have, at any time after August 13, 1994, a checking or savings deposit account with Bank of America into which payments of Social Security benefits or other public benefits are or have been directly deposited by the government or its agent." In 2003, the Bank had 1,079,414 such accounts. Each month more than $800 million in government benefits is electronically deposited into class members' accounts. Between January 1994 and May 2003, the Bank debited at least $284,211,273 in NSF and other overdraft fees from accounts containing Social Security direct deposits.

Miller and four class members gave similar testimony at trial. Each had Social Security or disability payments directly deposited to the Bank's checking account. Like Miller, class member Barbara Washington had other funds credited to her account due to a bank error and the Bank froze her account when it discovered and reversed the error, thereby denying her access to her Social Security benefit payments. Kevin Scott Anderson, Lupe Linda Rios and William Hawkridge each testified that their benefit payments were applied to cover overdrafts, NSF fees and service fees such as debit and automatic teller machine (ATM) fees.

Eric Kingson was called as an expert in Social Security to testify about the general characteristics of Social Security and Supplemental Social Security (SSI) recipients. In California, approximately three million people between the ages of 65 and 84 receive Social Security or SSI; another 400,000 recipients are 85 years old or older. In 2003 the average monthly Social Security benefit in California was $900 to $950; the maximum SSI benefit was $757 per month.

It is undisputed that the Bank covers overdrafts and fees incurred within customers' accounts with government benefits funds that are directly deposited. William Zuendt, a 30-year banker and former president and chief operating officer of Wells Fargo Bank, described standard industry practices. Zuendt explained that all banks clear negative checking account balances from incoming deposits to those accounts irrespective of their source, including deposits of government benefits. His

3

uncontradicted testimony explained that it is standard practice in the banking industry to apply incoming deposits against outstanding overdrafts regardless of the source of the funds.

Zuendt testified that if state law precluded banks from using incoming deposits of benefit payments to clear negative balances,[1] banks would have to impose numerous restrictions on accounts containing government benefits to prevent them from becoming overdrawn. Dan Carretta, an executive at the Bank, described the types of restrictions that would be required. The bank would refuse to honor any checks written against insufficient funds by account holders who directly deposit benefit payments, so there would be a higher incidence of dishonored, or "bounced," checks. Other measures would include preventing such customers from using ATM cards at other banks, placing the longest permissible hold on all deposited checks to minimize the incidence of returned items, and restricting or disallowing their use of debit cards.

The trial court instructed the jury that the Bank could not apply benefit funds to overdrafts and NSF fees. Jury instruction number 20 stated that "Governmental benefits, including Social Security funds, are exempt from collection by the bank for insufficient funds fees [], overdrafts and money claims it has against the account holders. This action by the Bank is called a set-off. Funds from other sources are not exempt under this procedure."

The jury found the Bank violated the CLRA by falsely representing to depositors that it had the right to use directly deposited Social Security funds "to pay overdrafts, insufficient funds fees" and "money claims it has against class members." Based on that violation, the jury awarded the class $75,077,836 in compensatory damages for amounts

---

[1] A negative balance is typically caused by honoring a check or debit transaction drawn on insufficient funds (see Cal. U. Com. Code, § 4401, subd. (a)). When an account holder overdraws his or her account, the transaction will generate a debit for the amount of the transaction and an additional debit for the bank's NSF fee. A negative balance may also result, as in the case of Mr. Miller, from a "chargeback," or the bank's reversal of an erroneous credit to an account.

collected as NSF fees, awarded statutory damages of $1,000 for each class member "who suffered substantial economic or emotional damage" as a result of the Bank's conduct and awarded Miller $275,000 in emotional distress damages.  On the common law misrepresentation claims, the jury found the Bank had made a "false representation of an important fact" to members of the class, but did not find reliance.  It rejected Miller's CLRA claim that the Bank "falsely represent[ed] that its direct deposit accounts are safe and secure for holding government benefits and that the funds in those accounts are instantly available to the account holder."

While the jury was deliberating, the trial court heard additional evidence on nonjury claims under the UCL, the FAA and the CLRA.  The trial court found that the Bank violated the CLRA, the UCL, and the FAA.  On all counts, the court's decision turned on the interpretation that *Kruger* prohibits banks from clearing overdrafts and NSF fees, or recovering any "other monetary claims,"[2] from directly deposited benefit funds. Based on this interpretation, the court concluded the Bank violated the CLRA's prohibition against misrepresenting legal rights or remedies (Civ. Code, § 1770, subd. (a)(14)) by asserting in a booklet distributed to account holders that "[t]he law grants us the right of setoff, under certain circumstances, to use funds in your account to pay any debts you owe us."  The court also concluded the Bank violated the CLRA's prohibition against unconscionable contract terms (§ 1770, subd. (a)(19)), by attempting to insert that statement into its agreements with class members.

The court identified three distinct violations of the UCL.  It concluded the Bank's violations of common law and the CLRA were unlawful business practices; that its account balancing practices were unfair within the meaning of Business and Professions

---

[2] The judgment seems narrower than the broader language appearing in the statement of decision in directing that the Bank is enjoined from representing it has the right to take "NSF fees or other *non-bank-fee* money claims" (italics added) from directly deposited public benefits.  Neither the judgment nor the statement of decision describes the nature of these "non-bank-fee money claims," which could conceivably have been meant to include chargebacks and overdrafts.

5

Code section 17500 in light of the policy that governmental benefits are exempt from collection; and that it committed a fraudulent practice by stating it had a right of setoff against its customers' accounts. The court also determined the Bank's statement about setoff violated the FAA's prohibition against untrue or misleading statements. The court rejected the Bank's affirmative defenses, including its argument that Miller's claims are preempted by federal law.

The court awarded compensatory damages and restitution of $296,650,220, the amount of NSF fees it determined the Bank had unlawfully collected from the class, and awarded Miller $275,000. It found "that any class member whose account was set off or assessed in violation of law has suffered substantial emotional or economic harm" under the CLRA, and was therefore entitled to a statutory damages award of $1,000. The court enjoined the Bank from: (1) "making any representation or statement to California customers or potential customers . . . that it has the right to set off or take NSF fees or other non-bank-fee money claims it has against customers from directly deposited Social Security benefits and other public benefits in customer deposit accounts in California"; and (2) "taking any directly deposited Social Security benefits or other public benefits from customer accounts in California to satisfy NSF fees and other monetary claims it has against customers."[3]

---

[3] The precise scope of the injunction is somewhat ambiguous. Does it encompass account overdrafts? It seems so. But on appeal Miller argues that it does not, emphasizing that the plaintiffs did not seek and were not awarded *damages* for the Bank's use of public benefit deposits to clear overdrafts, but, "only for the Bank's collection of [NSF] fees and other monetary claims like the collection of debts for erroneous deposits resulting from bank error." In his opposition to the Bank's petition for writ of supersedeas Miller stated clearly that "[n]othing in the judgment precludes the Bank" from clearing overdrafts against Social Security deposit accounts. We will not shift our focus and consider the scope of the injunction to reach only fees, because doing so would be inconsistent with the way Miller tried the case and the way the court decided it. It would fail to take into account the court's instruction to the jury that government benefits "are exempt from collection by the bank for insufficient funds fees . . ., *overdrafts* and money claims"; and its conclusion that the Bank violated the law by "seizing exempt Social Security funds to pay fees and *overdrafts* allegedly owed to the

The Bank filed a timely appeal. Miller cross-appealed from the denial of his claim for prejudgment interest. We issued a writ of supersedeas staying enforcement of the judgment pending appeal, and accepted amicus briefs from a number of interested groups who asked to participate on both sides of the controversy.[4]

## DISCUSSION

The variety of statutory and common law offenses embodied in the judgment turn entirely on the court's determination that *Kruger* prohibits the Bank from clearing overdrafts and debiting NSF fees or other money claims in a deposit account when the credits against those charges are from government benefits directly deposited into that same account. That was the basis for the court's instruction number 20, and the resulting conclusion that the Bank misrepresented that it had the right to clear overdrafts and NSF fees from such deposits. This application of *Kruger* is also essential to conclude that the Bank violated the CLRA by attempting to enter into unconscionable contracts, and violated the UCL and the FAA by representing that it had the right to apply government benefits to reconcile an account.

Miller relies heavily upon the broadly worded holding of *Kruger* that "a bank may not exercise its right of setoff against deposits which, derived from unemployment and disability benefits, are protected from the claims of creditors." (*Kruger*, *supra*, 11 Cal.3d at p. 356.) This phrasing, he asserts, "was intended to prohibit a bank's setoff in all

---

Bank"; and the jury's finding that the Bank misrepresented that it had the right to use Social Security funds to pay overdrafts. In their reply to supersedeas, plaintiffs characterized the injunction as prohibiting the Bank from exercising a setoff against "NSF fees *and overdrafts*."

[4] Appearing as amici curiae in support of the Bank are the American Bankers Association, America's Community Bankers, Consumer Bankers Association, Credit Union National Association, Financial Services Roundtable, Independent Community Bankers of America, California Bankers Association, California Credit Union League, and the United States of America. On behalf of the plaintiff class, we have considered amicus curiae briefs from the National Association of Consumer Advocates, The California Attorney General, Center for Responsible Lending, AARP, the National Consumer Law Center, and National Senior Citizens Law Center.

7

situations in which it acts as a creditor and seeks to collect exempt funds to satisfy its claims." But " ' " ' "the language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts." ' " ' " (*Moon v. Superior Court* (2005) 134 Cal.App.4th 1521, 1532.) The fundamental question for us is whether the Bank's practices are sufficiently like the banker's setoff in *Kruger* as to fall within the rule announced in that case. In other words, we must examine whether the Bank's practices of debiting accounts containing government benefits to cover overdrafts, NSF fees and bank errors are different in ways such that they should *not* be governed by the common law rule expressed in *Kruger*.

Traditionally, the "banker's setoff" is a common law practice derived from general principles of equity. (*Kruger, supra,* 11 Cal.3d at pp. 357, 367.) It allows a bank to set off an account holder's funds to satisfy an existing mature obligation owing to the bank without resorting to court action. (*Gonsalves v. Bank of America* (1940) 16 Cal.2d 169, 174.) In *Kruger,* the plaintiff maintained a checking account and a separate credit card account with the defendant bank. The only funds in her checking account came from disability and unemployment benefits. The question addressed was whether the bank, using the banker's setoff, could debit those general deposit funds to collect a debt the plaintiff owed on her credit card account.

The Supreme Court held that it could not. By statute, funds derived from state disability insurance and unemployment compensation are exempt from attachment and execution. (*Kruger, supra,* 11 Cal.3d at p. 367.) While the statutory exemption afforded to public benefit funds does not explicitly apply to the exercise of a banker's setoff, as a matter of public policy the court extended those statutory exemptions to prohibit the common law setoff employed by the bank in that case.

The court focused on the desirability of protecting government benefit payments from third party creditors' claims: "Although the banker's setoff differs from attachment and execution in that it does not require the aid of a state official, there is no relevant difference between the two procedures as to the state objective of protection of unemployment compensation and disability benefits from claims of creditors. The

8

assertion of a banker's setoff has exactly the same effect as a third party's levy of execution on the account—it deprives the depositor of the income which the state provided him to meet subsistence expenses, compelling the state either to give him additional money or leave him without means of physical survival." (*Kruger, supra,* 11 Cal.3d at pp. 370-371, fn. omitted.)

This concern, the court noted, had grown particularly pressing with the advent of commerce based increasingly on credit cards. "With the growth of bank-sponsored credit systems, a bank may gather unto itself the debts incurred by a depositor for past living expenses and satisfy by setoff debts which, in the days before Master Charge and Bank Americard, would have been held by many separate merchants and enforceable only through execution. To permit a bank which has thus collected the past obligations of its depositor to satisfy those claims from unemployment insurance deposits would completely defeat the state policy of preserving such deposits for the daily living expenses of the depositor." (*Kruger, supra,* 11 Cal.3d at p. 371, fn. omitted.) *Kruger* thus prevented banks from circumventing the statutory exemptions of government benefits from attachment and execution when collecting credit card debts through setoff.

We agree with the trial court that this case implicates to some extent the legislative preference at stake in *Kruger* to safeguard a basic subsistence-level income stream for recipients of public benefits. But allowing a bank to balance overdrafts, collect NSF fees and correct bank errors against deposits to the account in which they were incurred, even deposits of exempt funds, does not enable the bank to collect the customer's third party debts to multiple creditors as did the setoff addressed in *Kruger.* (*Kruger, supra,* 11 Cal.3d at p. 371.) We realize that debiting overdrafts and associated bank fees can cause serious financial distress to recipients of public benefits. Plaintiffs introduced evidence at trial that the likelihood and gravity of such financial distress may be compounded by the Bank's practice of paying the largest checks or charges first. Because the larger items are more likely to overdraw an account, subsequently processed smaller checks which may

otherwise have cleared will cause additional overdrafts and NSF fees.[5] But debiting an account holder's deposit to cover a check written on the same account does not present the same risk of circumventing the exemptions of public benefit funds from attachment and execution the Supreme Court addressed in *Kruger*.

There are other significant differences between this case and *Kruger*. Unlike the setoff against a credit card debt prohibited there, the judgment here would enjoin a basic method of balancing within a single account. This is not simply a distinction without a difference or a matter of creative accounting. Maintaining a deposit account, especially one with overdraft protection, inherently requires ongoing adjustment of the account balance to reflect debits, including payments and fees, and credits. As has been said in different contexts, it is common knowledge that bank statements on checking accounts "consist of debit and credit entries based on the deposits received, the checks written and the service charges to the account." (*People v. Lugashi* (1988) 205 Cal.App.3d 632, 642; see *Seibert v. Sears, Roebuck & Co.* (1975) 45 Cal.App.3d 1, 16 ["the 'outstanding balance' of any account is a net total shown to be owed when debits and credits in the account are compared"]; *Peoples Finance Etc. Co. v. Bowman* (1943) 58 Cal.App.2d 729, 734 [accounting generally means balancing credits and debits].) "The term 'account' involves the idea of debt and credit, and the balance of an account is the result of the debit and credit sides of the account, which constitutes a debt or claim, for which the party in whose favor it exists has the right of recovery." (*Millet v. Bradbury* (1895) 109 Cal. 170, 173-174.)

Collecting a debt unrelated to the bank account, such as a credit card debt, does not implicate the internal balancing of a single bank account. Neither Miller nor his various supporting amici curiae have cited, and we have not found, a single case that interprets *Kruger* to prohibit a bank from applying a deposit against a negative balance in a single bank account, or towards fees assessed because of that negative balance; indeed,

---

[5] While this practice may be longstanding, it appears to work significant hardship on small depositors. However, its legality and propriety, although raised peripherally in this litigation, are not now before the court.

the *distinction* between that practice and the banker's setoff against an independent account that was of concern in *Kruger* was observed in a closely related context. In *Lopez v. Washington Mut. Bank, FA* (9th Cir. 2002) 302 F.3d 900, the Ninth Circuit concluded that federal law exempting Social Security benefits from seizure[6] did not prohibit a bank from debiting a customer's account for overdrafts and NSF fees. (*Id.* at pp. 902-906.) The court expressly distinguished a Tenth Circuit Court of Appeals case holding a credit union could not set off Social Security benefits in a customer's checking account against the customer's obligation to the bank on a separate loan. (*Id.* at p. 906.) That situation was different, the court observed, because that loan obligation was "a separate, pre-existing debt *unrelated to the operation of the depositor's checking account*," and there was no indication the depositor had ever consented to pay that debt from his independent checking account. (*Ibid.*, italics added.) This distinction is consistent with the accepted meaning of setoff, which has traditionally been defined to mean a counterdemand "*growing out of an independent transaction.*"[7] (See Black's Law

---

[6] Title 42 of the United States Code, section 407(a) provides: "The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." (See also 42 U.S.C. § 1383(d)(1) [SSI benefits].)

[7] Nomenclature, of course, is not everything. We emphasize that our analysis does not hinge on whether the challenged practice is referred to as "setoff," "internal account balancing," "seizure," or some other moniker. Indeed, the term "setoff" itself may convey different meanings in different legal and factual contexts. (See generally *In re Hancock* (Bankr. N.D.Okl. 1992) 137 B.R. 835, 839-841.) In the words of Justice Cardozo, "The right of set-off . . . is not susceptible of definition in the abstract without reference to the time or occasion of the controversy or the relation of the suit to the primary proceeding . . . varying with the needs of the occasion. . . . [¶] . . . When things are called by the same name it is easy for the mind to slide into an assumption that the verbal identity is accompanied in all its sequences by identity of meaning. . . . [W]e disclaim . . . a willingness to put the law into a strait-jacket by subjecting it to a pronouncement of needless generality." (*In re Hancock, supra,* at pp. 840-841, quoting *Lowden v. N. W. National Bank* (1936) 298 U.S. 160, 164-166.) For our purposes today,

11

Dict. (8th ed. 2004) p. 1404, col. 2.)  In fact, the bank agreed during oral argument that imposing charges unrelated to the depositor's checking account is illegal under *Kruger*.

Our Legislature also indicated that the account balancing practices at issue here are different than the banker's setoff.  One year after *Kruger* was decided, a statute was enacted to impose notice requirements and other restrictions on a bank's right to set off independent debts against a customer's deposit account.  Section 864 of the Financial Code[8] requires a bank to give an account holder notice when it exercises any setoff for a debt, and an opportunity for the account holder to claim an exemption if the debt is not owing or the funds are exempt.  (§ 864, subds. (c)(1) & (c)(5).)  It also prohibits banks from exercising any setoff that would leave less than $1,000 in the customer's account.  (§ 864, subds. (b) & (f).)  Finally, subdivision (f) allows a bank to debit a deposit account without regard to these restrictions if it obtains the customer's advance written agreement.  (§ 864, subd. (f).)[9]

Key, in our view, is that this framework of restrictions on the traditional banker's setoff applies only to independent obligations—such as the credit card account involved in *Kruger*; significantly, the statute expressly *excludes* from its scope "charge[s] for bank services or a debit for uncollected funds or for an overdraft of an account imposed by a bank on a deposit account."[10]  (§ 864, subd. (a)(2); see *Symonds v. Mercury Savings &*

---

the significant point is that there exists a conceptual and practical distinction between banking operations carried out within one account and those that involve charging debits and credits between multiple accounts.

8  Hereinafter section 864.  We previously deferred consideration of Miller's unopposed request for judicial notice of the legislative history of section 864.  We now grant that request.

9  The statute expressly does not affect an account holder's right to assert statutory exemptions from levy and attachment, which include the exemption for directly deposited Social Security benefits.  (§ 864, subd. (h); see Code Civ. Proc., §§ 703.010, 704.080.)

10  In full, subdivision (a)(2) of section 864 states:  " 'Debt' means an interest-bearing obligation or an obligation which by its terms is payable in installments, which has not been reduced to judgment, arising from an extension of credit to a natural person primarily for personal, family, or household purposes, and does not mean a charge for

12

*Loan Assn.* (1990) 225 Cal.App.3d 1458, 1464, fn. 1.) Whether section 864 should be read as broadening or narrowing *Kruger* protections is irrelevant. This different treatment for overdrafts and bank charges signals the Legislature's view that internal account balancing is different from the practice of setting off separate debt against a deposit account, does not implicate the same considerations, and does not warrant the same legal treatment.

There was also considerable testimony that extending *Kruger* to internal account balancing practices would have adverse consequences not implicated in the context of a traditional banker's setoff. Bank witnesses testified that prohibiting a bank from debiting an account for overdrafts, chargebacks and NSF fees when a customer account contains directly deposited public benefits will cause banks to substantially curtail the services available to such account holders. Consequences might include dishonoring any checks that would overdraw those accounts instead of offering overdraft protection; dishonoring other payment requests, such as automatic bill payments, that could overdraw the account; placing maximum holds on deposited funds; forbidding online or telephone banking; and canceling or restricting account holders' use of ATM and debit cards.

The United States also weighed in on the issue. The Treasury Department expressed similar concerns on behalf of the federal government. According to the Treasury, the injunctive relief would likely cause banks to reduce the range of services available to recipients of government benefits in order to minimize the risk of overdrafts, or cause higher prices for such services, working a significant detriment on both the plaintiff class and the general public interest. Other approaches banks potentially could take to address the increased risk of loss from overdrafts would include requiring account holders to maintain a segregated balance of nonbenefit funds in their accounts or attempting to return direct deposits of benefits that are directed to overdrawn accounts and instead requiring deposit by check. These changes, the Treasury says, would

---

bank services or a debit for uncollected funds or for an overdraft of an account imposed by a bank on a deposit account."

undermine the federal government's goals of affording recipients of public benefits the same consumer protections offered other account holders and encouraging financial institutions to offer electronic banking services, including direct deposit, to individuals who traditionally do not use banks. There is no indication that any such consequences were implicated in *Kruger*.

Amici curiae dismiss the Bank's predictions of serious consequences for low income customers as self-serving, "sky is falling" exaggeration. As a reviewing court, we acknowledge that it was within the trial court's purview to give such testimony little weight. But that these considerations are debatable, and being debated, is itself an indication that the situation involves complex considerations not present in *Kruger*. We heed the warning in *Lazzareschi Inv. Co. v. San Francisco Fed. Sav. & Loan Assn.* (1971) 22 Cal.App.3d 303, 311, that deciding whether to extend the rule announced in *Kruger* to the present context "is better accomplished by statute or by regulation authorized by statute than by *ad hoc* decisions of the courts. Legislative committees and an administrative officer charged with regulating an industry have better sources of gathering information and assessing its value than do courts in isolated cases." (See also *California Grocers Assn. v. Bank of America* (1994) 22 Cal.App.4th 205, 218.) Different considerations apply to, and different consequences may well flow from, the regulation of the different practices involved in *Krueger* and this case. In view of those differences, it is not surprising that in the 30 plus years since *Kruger* was decided, no other court, until now, has construed *Kruger* to apply to the management of debits and credits within a single account. This is a complex and heavily regulated area more suited to legislative than judicial action so we conclude the trial court erred by finding *Kruger* governs this significantly different situation. Because that ruling is fundamental to the verdicts on all counts, the judgment is reversed in its entirety.[11]

---

[11] We therefore do not reach issues of federal preemption, the damages award, and the Bank's defense and counterclaim of setoff. Plaintiffs' cross-appeal is mooted by our resolution of the main appeal.

## DISPOSITION

The judgment is reversed.  Each party to bear their own costs.

_____

Siggins, J.

We concur:

_____

McGuiness, P.J.

_____

Parrilli, J.

*Miller v. Bank of America, NT & SA*, A110137

| | |
|---|---|
| Trial Court: | San Francisco County Superior Court |
| Trial Judge: | Honorable Anne Bouliane |
| Counsel for Plaintiffs and Appellants: | The Sturdevant Law Firm<br>James C. Sturdevant<br>Mark T. Johnson<br>Monique Olivier |
| | Law Offices of Thomas J. Brandi<br>Thomas J. Brandi<br>Brian J. Malloy |
| Counsel for Amici Curiae on<br>behalf of Plaintiffs and Appellants: | Barbara Jones<br>Rochelle Bobroff<br>Michael Schuster<br>(AARP Foundation Litigation) |
| | Gerald McIntyre<br>Deanne Loonin<br>(National Senior Citizens Law Center) |
| | Margot Saunders<br>(National Consumer Law Center) |
| | Eric Halperin<br>Kathleen Keest<br>Amanda Quester<br>(Center for Responsible Lending) |
| | Bramson, Plutzik, Mahler & Birkhaeuser<br>Robert M. Bramson<br>(National Association of Consumer Advocates) |
| | Bill Lockyer, Attorney General<br> of the State of California<br>Richard M. Frank<br> Chief Deputy Attorney General<br>Tom Greene<br> Chief Assistant Attorney General<br>Herschel T. Elkins<br> Special Assistant Attorney General |

16

Counsel for Defendant and Appellant:    Marc A. Lackner, Associate General Counsel
                                         Bank of America, N.A.

                                         O'Melveny & Myers
                                         Walter Dellinger
                                         Debra S. Belaga
                                         Matthew D. Roberts

                                         Calvo & Clark
                                         Arne D. Wagner

                                         Morrison & Foerster
                                         Arturo J. Gonzalez

Counsel for Amici Curiae on
  behalf of Defendant and Appellant:     Coblentz, Patch, Duffy & Bass
                                         Jonathan R. Bass
                                         Susan K. Jamison
                                         (California Bankers Association and
                                           California Credit Union League)

                                         Arnold & Porter
                                         Laurence J. Hutt
                                         Howard N. Cayne
                                         Nancy L. Perkins
                                         (American Bankers Association, America's
                                         Community Bankers, Consumer Bankers
                                         Association, The Financial Services
                                         Roundtable, and Independent Community
                                         Bankers of America)

                                         Peter D. Keisler
                                           Assistant Attorney General
                                         Kevin V. Ryan
                                           United States Attorney
                                         William Kanter
                                         Howard S. Scher
                                         Thomas M. Bondy

# EXHIBIT

# E

SUMMONS ISSUED
FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

05 FEB 17 PM 2: 34

GORDON PARK - LI, CLERK

1   JAMES C. STURDEVANT (SBN 94551)
    MARK T. JOHNSON (SBN 76904)
2   MONIQUE OLIVIER (SBN 190385)   CASE MANAGEMENT CONFERENCE SET
    THE STURDEVANT LAW FIRM
3   A Professional Corporation      PLAN 1   JUL 2 2 2005   9:00 AM
    475 Sansome Street, Suite 1750
4   San Francisco, CA 94111                                          BY: _____
    Telephone: (415) 477-2410                                        DEPUTY CLERK
5   Facsimile: (415) 477-2420       DEPARTMENT 212

6   Attorneys for Plaintiffs and the Plaintiff Class

7

8

9            IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

10              IN AND FOR THE COUNTY OF SAN FRANCISCO

11                        UNLIMITED JURISDICTION

12
    SCOTT ANDERSON, PAUL MILLER,          )   CASE NO.    CGC - 05 - 438769
13  WILLIAM HAWKRIDGE, individually       )
    and on behalf of others similarly situated,  )   CLASS ACTION
14                                        )
                                          )   COMPLAINT FOR FRAUD;
15               Plaintiffs,              )   NEGLIGENT MISREPRESENTATION;
                                          )   VIOLATION OF PUBLIC POLICY;
16       vs.                              )   VIOLATION OF CODE OF CIVIL
                                          )   PROCEDURE §§ 1750, et seq.;
17                                        )   VIOLATION OF BUSINESS AND
    BANK OF AMERICA N.A., and DOES 1 - 50, )   PROFESSIONS CODE §§ 17200, et seq.;
18                                        )   VIOLATION OF BUSINESS AND
                                          )   PROFESSIONS CODE §§ 17500, et seq.
19               Defendants.              )
                                          )
20  _____)

21

22                          **INTRODUCTION**

23       Plaintiffs Scott Anderson, Paul Miller and William Hawkridge, by and through their attorneys,

24  bring this action on behalf of themselves and a class of similarly-situated persons to challenge defendant

25  Bank of America's unlawful, unfair and fraudulent policy and practice of collecting from Social Security

26  and public benefit direct deposit accounts and assessing unlawful and unfair overdraft and insufficient

27  fees ("NSF") against Social Security and public benefit direct deposit accounts. Defendant's actions

28

                                          1
                                      COMPLAINT

1   violate California statutes, as well as the law established in *Kruger v. Wells Fargo Bank* (1974)

2   11 Cal.3d 352 that Social Security and other public benefits for the essential needs of their recipients are

3   exempt from a bank's setoff. Plaintiffs seek compensatory and punitive damages, restitution, declaratory

4   and injunctive relief, and attorneys' fees, costs and expenses.

5                                    **PARTIES**

6        1.    Plaintiff Scott Anderson is an individual, residing at all relevant times in Santa Cruz

7   County, California.

8        2.    Plaintiff Paul Miller is an individual residing at all relevant times in the City and County

9   of San Francisco, California.

10       3.    Plaintiff William Hawkridge is an individual residing at all relevant times in Rio Linda,

11  Sacramento County, California.

12       4.    Each of the named plaintiffs are consumers who, at some time since January 1, 2004,

13  have had a checking or savings account with Bank of America in California into which "Social Security

14  benefits" or "public benefits", as those terms are defined in Code of Civil Procedure section

15  704.080(a)(2), have been directly deposited by the government or its agent. (Referred to hereafter as

16  "Direct Deposit Accounts").

17       5.    At all times material herein, plaintiffs' Social Security benefits and public benefits from

18  the U.S. government or other government agency were directly deposited into their account with

19  defendant Bank of America on a monthly basis. Defendant Bank of America has repeatedly collected

20  from each of plaintiffs' Direct Deposit Accounts debts allegedly owed by them to Bank of America,

21  including charges for overdrafts on the account, in violation of California public policy.

22       6.    At the time this action was filed and at material times alleged herein, defendant Bank of

23  America, N.A. ("Bank of America") was a national bank, doing business in San Francisco, California

24  and throughout the state of California. At all times relevant to this action Bank of America has been and

25  is engaged in a nationwide business of marketing and providing banking and other financial services,

26  including Direct Deposit Accounts. Bank of America has offices and does business throughout

27  California, including in San Francisco County. Bank of America affirmatively solicits Social Security

28  Direct Deposit customers residing in the State of California, and provides services to and collects

                                        2

1  payments from such customers.

2      7.    Plaintiffs are ignorant of the true names and capacities of defendants sued herein as

3  DOES 1-50, and therefore sues these defendants by such fictitious names. Plaintiffs will amend their

4  complaint to state the true names and capacities when ascertained. Plaintiffs are informed and believe

5  that each of the fictitiously named defendants is responsible in some manner for the occurrences and

6  damages alleged herein, and that plaintiffs' damages as hereinafter set forth were proximately caused by

7  said defendants.

8      8.    Plaintiffs are informed and believe and thereon allege that each of the defendants acted in

9  concert with each and every other defendant, intended to and did participate in the events, acts, practices

10  and courses of conduct alleged herein, and was a proximate cause of damage and injury thereby to

11  plaintiffs as alleged herein.

12      9.    At all times herein mentioned, each defendant was the agent or employee of each of the

13  other defendants and was acting within the course and scope of such agency or employment.

14  **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

15      10.    On or about August 13, 1998 a class action was filed in this Court against Bank of

16  America, N.A. formerly known and sued as Bank of America, N.T. & S.A., on behalf of approximately

17  1.1 million Bank of America customers.  The action, *Miller v. Bank of America*, Case No. 301917

18  ("*Miller*"), alleged on behalf of plaintiff Paul Miller and the class persons that the Bank engaged in

19  unlawful, unfair and fraudulent conduct in violation of the Unfair Competition Law ("UCL"), Business

20  and Professions Code section 17200 *et seq.*; false and deceptive advertising in violation of the False

21  Advertising Act ("FAA"), Business and Professions Code section 17500 *et seq.;* and deceptive practices

22  in violation of the Consumer Legal Remedies Act ("CLRA"), Civil Code section 1750 *et seq.*

23      11.    On or about October 16, 2002, this Court certified a class in *Miller* consisting of the

24  following persons:

25          All California residents who have, have had, or will have, at any time after

26          August 13, 1994, a checking or savings deposit account with Bank of

27          America into which payments of Social Security benefits or other public

28          benefits are or have been directly deposited by the government or its agent.

3<br>COMPLAINT

12.    On or about February 25, 2004, following a jury trial in *Miller*, the jury issued a verdict, with findings of fact. The verdict awarded damages to the plaintiff class in the amount of $75,077,836.00 for amounts unlawfully collected from the plaintiff class by the defendant in the form of non-sufficient funds fees ("NSF fees") set off and taken from Direct Deposit Accounts in violation of the law through December 31, 2003. The jury also awarded an additional sum of $1,000.00 per class member as statutory damages pursuant to Civil Code section 1780(b).

13.    On or about December 30, 2004, having heard additional evidence on the non-jury claims, the Court in *Miller* issued a Statement of Decision finding that Bank of America had violated the CLRA and the UCL and awarding the plaintiff class the sum of $284,385,741.00 in damages and restitution, representing NSF fees unlawfully collected through December 31, 2003, plus interest thereon. The Court also awarded the plaintiff class the additional amount of $1,000.00, plus interest, for each class member whose account was unlawfully assessed an NSF fee through the date of December 31, 2003.

14.    Since December 31, 2003, Bank of America has continued to engage the conduct which the jury and the Court found unlawful in *Miller* for which damages and restitution were awarded through the end of 2003. Although the Court in *Miller* directed that Bank of America be "enjoined from setting off or collecting NSF fees and other monetary claims from directly deposited Social Security funds and public benefits," judgment has not yet been issued and the Court's Statement of Decision stays enforcement of the injunction for a period which extends 10 days beyond the last date on which a notice of appeal may be filed. Accordingly, Bank of America has continued to unlawfully collect NSF fees from Direct Deposit Accounts since December 31, 2003, in an amount estimated to exceed 3 million dollars per month. None of those unlawfully collected sums are the basis for or are included in the monetary award in *Miller*.

15.    Bank of America knew at all times relevant herein that each of the plaintiffs received Social Security benefits or public benefits from the federal government or other government agency.

16.    Bank of America never notified plaintiffs that their Social Security benefit payments or other public benefits were entitled to any special protection or treatment.

17.    Electronic funds transfer direct deposits, including direct deposits of Social Security and

1  public benefits, have become, and will continue to be, a lucrative source of income for banks and other

2  financial institutions, including without limitation Bank of America, because of the large number of

3  recipients of federal wages, salaries, retirement benefits and other benefits and payments. Plaintiffs are

4  informed and believe and thereon allege that this revenue stream is a significant incentive for Bank of

5  America to keep Direct Deposit Accounts open despite overdraft and return activity that would

6  otherwise warrant closing the accounts and to continue to assess and collect as a creditor charges against

7  the accounts for unpaid debts. Bank of America has the power to close accounts without notice if, in the

8  discretion of Bank of America, overdraft and return activity or outstanding obligations warrant such

9  action.

10      18.    Plaintiffs are informed and believe and thereon allege that Bank of America has

11  established more than one million Direct Deposit Accounts for recipients of Social Security benefits and

12  other public benefits. Bank of America charges and collects substantial service fees for each of these

13  accounts.

14      19.    Plaintiffs are informed and believe and thereon allege that many of the recipients of

15  Social Security benefits and public benefits who have Direct Deposit Accounts with Bank of America

16  for such benefits are senior citizens, as defined by California Civil Code § 1761 (f) and California

17  Business and Professions Code § 17206.1 (b) (1), and/or disabled persons, as defined by California Civil

18  Code § 1761 (g) and California Business and Professions Code § 17206 (b) (2).

19      20.    Plaintiffs are further informed and believe and thereon allege that Bank of America,

20  through advertising, brochures and other promotional materials, has represented to its direct deposit

21  customers and applicants for such accounts that its Direct Deposit Accounts are safe and secure, that

22  funds in those accounts are instantly available, that customers will have immediate access to the funds

23  deposited to their accounts, and they could be assured that their money would be in the account.

24      21.    Plaintiffs are further informed and believe and thereon allege that Bank of America has

25  not notified any customers or potential customers of Social Security benefit direct deposit, through

26  advertising or other means, that such benefits are exempt under California law from the Bank's efforts to

27  collect debts or assert claims against funds in those accounts, including NSF fees. Bank of America has

28  not notified these customers and potential customers that despite California law exempting these

5

1  accounts from collection proceedings by creditors it will seize funds in those accounts to cover the

2  Bank's claims against those customers.

3      22.    Plaintiffs are further informed and believe and thereon allege that many of the Bank of

4  America customers who own, maintain and use Direct Deposit Accounts are unable, through age,

5  infirmity and/or lack of understanding, to fully comprehend the nature and extent of charges, including

6  but not limited to substantial recurring and escalating overdraft and return charges, and unauthorized

7  collections, and other adverse consequences that could be and/or have been imposed upon Direct

8  Deposit Account holders by Bank of America.

9      23.    Bank of America has knowingly and willfully collected from plaintiffs' Social Security

10  benefit Direct Deposit Accounts monies allegedly owed to it.

11      24.    As a result of the practices described above, plaintiffs and other Bank of America

12  customers who are members of the class have been damaged in that Bank of America has taken and

13  denied access to monies that are exempt from collection and intended to be available exclusively to the

14  beneficiaries of such funds and for their use. Such conduct as alleged herein is unconscionable and

15  contrary to statute and therefore unlawful. Plaintiffs have been further damaged in that Bank of America

16  has deprived them of access to Social Security benefits and other public benefits in their accounts and

17  plaintiffs have been unable to purchase the goods and services for which the benefits are provided.

18  **CLASS ACTION ALLEGATIONS**

19      25.    Pursuant to California Code of Civil Procedure § 382 and California Civil Code § 1781,

20  plaintiffs bring this action on behalf of themselves and all other persons similarly situated. The class

21  that plaintiffs represent (hereinafter the "Plaintiff Class") is composed of all California residents who

22  have or have had a Bank of America Social Security or public benefit Direct Deposit Account at any

23  time after December 31, 2003. Plaintiffs are unable to state the precise number of potential members of

24  the Plaintiff Class because that information is in the possession of defendant Bank of America.

25  Plaintiffs are informed and believe and thereon allege that the Plaintiff Class exceeds one million

26  customers and is therefore so numerous that joinder of all members would be impracticable. The exact

27  size of the Plaintiff Class, and the identity of the members thereof, are readily ascertainable from the

28  business records of Bank of America.

26.    Questions of law and fact common to the Plaintiff Class exist that predominate over questions affecting only individual members, including, *inter alia,* the following:

a.    Whether Bank of America has knowingly and willfully deducted from Social Security and public benefits Direct Deposit Accounts charges that are exempt from collection by California law;

b.    Whether the practice of Bank of America in knowingly and willfully, and/or negligently, collecting monies allegedly owed to Bank of America from Direct Deposit Accounts, is contrary to the law of California as reflected in *Kruger v. Wells Fargo Bank* (1974) 11 Cal.3d 352;

c.    Whether the actions and representations of Bank of America as hereinabove described violate the Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.*;

d.    Whether the actions and representations of Bank of America as hereinabove described were fraudulent or constitute negligent misrepresentations;

e.    Whether plaintiffs and the other members of the Plaintiff Class were injured financially and emotionally by reason of the unlawful, unfair and/or fraudulent conduct of Bank of America and the class-wide measure of damages;

f.    Whether plaintiffs and the other members of the Plaintiff Class are entitled to injunctive relief and restitution.

27.    The claims asserted by the named plaintiffs in this action are typical of the claims of the members of the Plaintiff Class as described above; the claims arise from the same course of conduct by Bank of America; and the relief sought is common.

28.    The named plaintiffs herein will fairly and adequately represent and protect the interests of the members of the Plaintiff Class.  Plaintiffs have retained counsel competent and experienced in both consumer protection and class action litigation.

29.    A class action is superior to other methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, because the economic damages suffered by the individual class members may be relatively modest, compared to the expense and burden of individual litigation, it would be impracticable for most Plaintiff Class members to seek redress individually for the wrongful conduct alleged herein.  There will be no real difficulty in the management

1    of this litigation as a class action.

## FIRST CAUSE OF ACTION FOR DAMAGES AND PUNITIVE DAMAGES

### (Violation of California Civil Code §§ 1709, 1710 (Fraud, Deceit, Concealment)

### Asserted on Behalf of Plaintiffs and the Plaintiff Class)

30.     Plaintiffs reallege and incorporate herein by reference the allegations set forth in each of the foregoing paragraphs as if fully alleged herein.

31.     At all times herein mentioned, defendant Bank of America was in the business of providing banking services, including but not limited to direct deposit checking or savings accounts, to the general public. Among the accounts provided were accounts into which direct deposits of Social Security benefits and public benefits could be and were made.

32.     At all times herein mentioned, Bank of America represented to class members through brochures, advertisements, and other means that direct deposits were safe, that customers could be assured that their directly deposited funds would be in their accounts and instantly available, and that they would have immediate access to those funds.

33.     Bank of America failed to disclose to class members and the public that it would collect funds in Social Security and public benefit Direct Deposit Accounts to satisfy overdrafts, NSF or overdraft fees and other debts allegedly owed to the bank, and that such funds would not be safe from such collection actions nor instantly available or accessible to customers.

34.     Bank of America also represented to customers and the public that it had the right of setoff against funds in customers' Direct Deposit Accounts when in fact it had no such right under applicable law to exercise a right of setoff against funds maintained in those accounts. Bank of America, in fact, concealed from class members the fact that it is legally prohibited from exercising a right of setoff against customers whose accounts receive direct deposit of Social Security and public benefits. Bank of America had a duty to disclose this fact to class members but intentionally failed to do so. Bank of America disclosed some facts, i.e. the fact that it had a general right of setoff against accounts, but actively and intentionally failed to disclose the important fact, known to the bank but not class members, that Social Security and public benefits are exempt from such right of setoff.

35.     Bank of America's representations and omissions were untrue in that at all times material

1  herein Bank of America unlawfully collected monies from Social Security and public benefit Direct

2  Deposit Accounts in violation of California law as reflected in *Kruger v. Wells Fargo Bank* (1974) 11

3  Cal.3d 352, thereby making the Direct Deposit Accounts unsafe and insecure and rendering instant

4  access to their Social Security and public benefits by account holders unreliable.

5      36.    Bank of America made the representations and omissions herein alleged with the

6  intention of inducing the public, including but not limited to plaintiffs and members of the class, to open,

7  maintain, and use Bank of America's Direct Deposit Accounts.

8      37.    Plaintiffs were aware of Bank of America's representations herein alleged and relied on

9  them and the alleged omissions in opening and maintaining their Direct Deposit Accounts with Bank of

10 America.

11     38.    At the time Bank of America made the representations herein alleged, Bank of America

12 knew that the representations were false.

13     39.    Bank of America made the representations herein alleged with the intention of depriving

14 plaintiffs of property or legal rights, to wit: the use of some or all of their Social Security and public

15 benefits which were or are deposited into their Direct Deposit Accounts, causing injury.  This conduct of

16 Bank of America was fraudulent.

17     40.    As a proximate result of Bank of America's intentional misrepresentations, plaintiffs

18 were damaged by suffering the loss of some of their Social Security and public benefits and by being

19 unable to readily acquire, possess, and use the goods and services ordinarily paid for by their Social

20 Security and public benefits, in an amount to be proved at trial.

21     41.    The wrongful conduct of Bank of America, as herein alleged, was intentional and was

22 done with malicious, oppressive or fraudulent intent.  Plaintiffs are therefore entitled to recover punitive

23 damages.

24           **SECOND CAUSE OF ACTION FOR DAMAGES**

25  **(For Negligent Misrepresentation, Asserted on Behalf of Plaintiffs and the Plaintiff Class)**

26     42.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in each of

27 the foregoing paragraphs, except for paragraph 38, as if fully alleged herein.

28     43.    At the time Bank of America made the misrepresentations herein alleged, Bank of

1    America had no reasonable grounds for believing the representations to be true.

2        44.    As a proximate result of Bank of America's negligent misrepresentations, plaintiffs were

3    damaged by suffering the loss of some of their Social Security and public benefits and by being unable to

4    access those benefits and acquire, possess, and use the goods and services ordinarily paid for by these

5    benefits, in an amount to be proved at trial.

6        **THIRD CAUSE OF ACTION FOR DAMAGES AND INJUNCTIVE RELIEF**

7        **(Violation of the Public Policy, Asserted on Behalf of Plaintiffs and the Plaintiff Class)**

8        45.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in each of

9    the foregoing paragraphs as if fully alleged herein.

10        46.    The law of the state of California is to recognize that certain government benefits such as

11    unemployment insurance, Social Security, disability benefits and other public benefits are intended to

12    provide essential financial assistance to those in need. *See Kruger v. Wells Fargo Bank* (1974) 11

13    Cal.3d 352.

14        47.    The law of the state of California also is to protect government benefits such as

15    unemployment insurance, Social Security, disability benefits and other public benefits from seizure by

16    creditors so that such benefits may be used by their recipients, including individuals who are retired

17    and/or disabled, to pay their current living expenses. *See Kruger v. Wells Fargo Bank* (1974) 11 Cal.3d

18    352.

19        48.    Defendant Bank of America's knowing and willful seizure of plaintiffs' Direct Deposit

20    Accounts' funds consisting of Social Security and public benefits violates California law established in

21    *Kruger.*

22        49.    Defendant Bank of America's knowing and willful seizure of social security and/or

23    disability benefits causes damage to plaintiffs and members of the class, in that they are thereafter

24    deprived of access to the benefits and are unable to use the benefits for their subsistence, the purpose for

25    which the benefits are provided.

26

27

28

**FOURTH CAUSE OF ACTION FOR RESTITUTION AND INJUNCTIVE RELIEF**

**(Violation of the Consumer Legal Remedies Act, California Civil Code § 1750, *et seq.*,**

**on Behalf of Plaintiffs and the Plaintiff Class)**

50.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in each of the foregoing paragraphs as if fully alleged herein.

51.    The Consumer Legal Remedies Act, California Civil Code § 1750, et seq. (hereinafter "the CLRA"), was designed to protect consumers from unfair and deceptive business practices. To this end, the CLRA sets forth a list of unfair and deceptive acts and practices that are specifically prohibited in any transaction intended to result in the sale or lease of goods or services to a consumer. The provisions of the CLRA may not be waived by any consumer. Civil Code § 1751. Cal. Civil Code § 1770. Defendant Bank of America's acts and practices, as hereinabove described, violate the following provisions of the CLRA, without limitation:

a..) § 1770 (a) (5) in that Bank of America represented that the services (Direct Deposit Accounts) have characteristics, uses, benefits or qualities which they do not have, to wit: safety, security and instant availability;

b.) § 1770 (a) (7) in that Bank of America represented that the services (Direct Deposit Accounts) are of a particular standard and quality of safety, security and reliability that the accounts did not possess;

c.) § 1770 (a) (13) in that Bank of America made false and misleading statements concerning the safety, security and reliability of its Direct Deposit Accounts;

d.) § 1770 (a) (14) in that Bank of America represented that the banking transactions arising out of its Direct Deposit Accounts conferred rights and remedies which they did not have or which are prohibited by law, namely *Kruger v. Wells Fargo Bank* (1974) 11 Cal.3d 352;

e.) § 1770 (a) (19) in that Bank of America attempted to insert and inserted unconscionable provisions in the contract for the provision of Direct Deposit Accounts for government Social Security benefits concerning assessment and collection of fees for overdrafts and return items.

52.    As a result of the unfair and deceptive acts and practices of Bank of America hereinabove described, plaintiffs and members of the Plaintiff Class have suffered substantial economic losses in an

1    amount to be proven at trial.

2        53.    Pursuant to California Civil Code §§ 1780 and 1781, plaintiffs and the Plaintiff Class

3    hereby request certification of the Plaintiff Class, injunctive relief, restitution and attorneys' fees, costs

4    and expenses pursuant to California Civil Code § 1780 (d).  Concurrently with the filing of this

5    complaint, pursuant to Civil Code section 1782(a), plaintiffs are taking steps to notify Bank of America

6    of the violations alleged herein and demand, on behalf of themselves and the class, that appropriate

7    remedial action be taken.  Should such action not be taken within the time permitted, plaintiffs will seek

8    leave to amend the complaint to seek damages under this cause of action pursuant to Civil Code section

9    1782(d).

10        **FIFTH CAUSE OF ACTION FOR RESTITUTION AND INJUNCTIVE RELIEF**

11        **(Violation of California Business and Professions Code §§ 17200, *et seq.*,**

12        **Asserted on Behalf of Plaintiffs and the Plaintiff Class)**

13        54.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in each of

14    the foregoing paragraphs as if fully alleged herein.

15        55.    California Business and Professions Code § 17200, The Unfair Competition Law

16    ("UCL"), defines unfair competition to include any unlawful, unfair or fraudulent business act or

17    practice.  The UCL provides that a Court may order injunctive relief and restitution to class members as

18    remedies for any violation of the Act.

19        56.    The business acts and practices of defendant Bank of America, as hereinabove and

20    hereinafter described, constitute an unlawful business practice in violation of the UCL for the reasons set

21    forth below, without limitation:

22            a.  The acts and practices violate California Civil Code §§ 1709 and 1710 for the reasons

23    set forth in the First and Second Causes of Action, and are therefore unlawful;

24            b.  The acts and practices violate California Civil Code § 1750, *et seq.*, for the reasons set

25    forth in the Third Cause of Action and are therefore unlawful.

26            c.  The acts and practices violate California Business and Professions Code § 17500 for

27    the reasons set forth in the Fifth Cause of Action and are therefore unlawful.

28            d.  The acts and practices violate California public policy as expressed in *Kruger v. Wells*

12
COMPLAINT

1  *Fargo Bank* (1974) 11 Cal.3d 352 in that they constitute an unlawful collection by defendant Bank of

2  America against benefits from the government intended to be used by the recipient of such benefits for

3  essential living needs and expenses.

4      57.    The business acts and practices of defendant Bank of America as hereinabove described

5  also constitute an unfair business practice in violation of the UCL in that such acts and practices are

6  substantially injurious to consumers and offensive to established California public policy.

7      58.    In addition, the business acts and practices of defendant Bank of America as hereinabove

8  described constitute a fraudulent business practice in violation of the UCL in that such acts and practices

9  are likely to deceive California consumers as to their legal rights and obligations with respect to

10  protection from collection of funds in their Direct Deposit Accounts and protection from the

11  consequences of excessive overdrafts.

12      59.    Pursuant to California Business and Professions Code §17203 plaintiffs seek to enjoin

13  these acts and practices and to obtain restitution of all funds seized from plaintiffs and the Plaintiff Class

14  by reason of and through the use of such unlawful, unfair and fraudulent acts and practices. Pursuant to

15  California Business and Professions Code §17203, plaintiffs, individually, and on behalf of the Plaintiff

16  Class hereby request preliminary and permanent injunctive relief prohibiting such practices in the future,

17  and such other orders as may be necessary to restore members of the class any money or property, real or

18  personal, which may have been seized from them by means of such unlawful, unfair and fraudulent

19  business practices, and to disgorge all profits defendants have earned thereby. In addition, pursuant to

20  California Code of Civil Procedure § 1021.5, plaintiffs are entitled to recover their reasonable attorneys'

21  fees, costs and expenses incurred in bringing this action.

22      **SIXTH CAUSE OF ACTION FOR RESTITUTION AND INJUNCTIVE RELIEF**

23      **(Violation of California Business and Professions Code §§ 17500, *et seq.*;**

24      **Asserted on Behalf of Plaintiffs and the Plaintiff Class)**

25      60.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in each of

26  the foregoing paragraphs as if fully alleged herein.

27      61.    Plaintiffs bring this Cause of Action on behalf of themselves and the Plaintiff Class.

28  California Business and Professions Code § 17500 prohibits untrue or misleading advertising.  A Court

1  may order injunctive relief and restitution as remedies for any violations of Business and Professions

2  Code § 17500 as part of the UCL.

3       62.    At all times material herein defendant Bank of America has engaged in advertising to the

4  public, including plaintiffs, and offering to the public bank accounts that include Direct Deposit

5  Accounts. The advertisements include, without limitation, brochures stating, "direct deposit is

6  convenient and safe;" "you can be assured your money will be in the bank when you need it;" "you'll

7  have the security of knowing your check is in the bank;" "funds are available immediately;" "instantly

8  available;" "you can depend upon receiving your payment safely and reliably, every single month;"

9  "instant access to your money;" and "you can be assured your money is in the account." The

10  advertisements were disseminated to and received by the public, including members of the Plaintiff

11  Class, in California.

12       63.    Defendant Bank of America engaged in the advertising herein alleged with the intent to

13  induce the public and class members to open, maintain and use Bank of America Direct Deposit

14  Accounts.

15       64.    Defendant Bank of America's advertising was untrue or misleading and likely to deceive

16  the public in that while Bank of America stated and implied that Direct Deposit Accounts were safe,

17  secure and reliable, the aforesaid accounts were subject to appropriation by defendant Bank of America

18  itself for alleged debts owed to the bank, as well as excessive, escalating, recurring and unconscionable

19  fees, overdraft and return charges, rendering the Direct Deposit Accounts unsafe, insecure and

20  unreliable. Bank of America continued to keep open and collect fees from Direct Deposit Accounts with

21  excessive overdraft activity, thereby depriving the owners of those accounts of Social Security and

22  public benefits of access to some or all of the funds in their accounts, thus impairing their ability to

23  purchase the goods and services for which such benefits were provided.

24       65.    In making and disseminating the statements herein alleged, Bank of America knew, or by

25  the exercise of reasonable care should have known, that the statements were and are untrue or

26  misleading and so acted in violation of California Business and Professions Code § 17500.

27       66.    The business acts and practices of defendant Bank of America as hereinabove described

28  also constitute an unfair business practice in violation of the UCL in that such acts and practices are

substantially injurious to consumers and offensive to established California public policy.

67.    In addition, the business acts and practices of defendant Bank of America as hereinabove described constitute a fraudulent business practice in violation of the UCL in that such acts and practices are likely to deceive California consumers, including class members, as to their legal rights and obligations with respect to the safety and security of their Direct Deposit Accounts and protection from collection by Bank of America and from the consequences of overdrafts.

68.    Pursuant to California Business and Professions Code § 17535, plaintiffs seek to enjoin these acts and practices and to obtain restitution of all funds seized from plaintiffs and the Plaintiff Class by reason of and through the use of such false advertising. Pursuant to California Business and Professions Code § 17535, plaintiffs, individually, and on behalf of all members of the general public who are, have been, or may be, subjected to these unlawful, unfair, and fraudulent business acts and practices of defendants, hereby requests preliminary and permanent injunctive relief prohibiting such practices in the future, and such other orders as may be necessary to restore to each class member any money or property, real or personal, which may have been seized from them by means of such false advertising, and to disgorge all profits defendants have earned thereby. In addition, pursuant to California Code of Civil Procedure § 1021.5, plaintiffs are entitled to recover their reasonable attorneys' fees, costs and expenses incurred in bringing this action.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully pray as follows:

1.    That this Court certify this case as a class action;

2.    That this Court find and declare the defendant's acts and practices as described herein to be unlawful, unfair and fraudulent;

3.    That plaintiffs and the Plaintiff Class be awarded compensatory damages according to proof at trial, except that no damages are sought by this complaint or at this time for violations of the Consumer Legal Remedies Act, Civil Code section 1750, *et seq.*;

4.    That plaintiffs and the Plaintiff Class be awarded punitive damages according to proof at trial, except that no such damages are sought by this complaint or at this time for violations of the

1  Consumer Legal Remedies Act, Civil Code section 1750, *et seq*;

2        6.      That defendants be preliminarily and permanently enjoined from engaging in the

3  unlawful, unfair and fraudulent acts and practices alleged herein;

4        7.      That defendants be ordered to make restitution to plaintiffs and all members of the

5  Plaintiff Class;

6        8.      That the court make such orders as may be necessary to restore to any person in interest

7  any money or property, real or personal, which may have been seized from plaintiffs by means of such

8  unlawful, unfair and fraudulent business practices, and to disgorge all profits defendants have earned

9  thereby;

10       9.      That plaintiffs and the Plaintiff Class be awarded attorneys' fees and expenses pursuant to

11  California Civil Code § 1780 and California Code of Civil Procedure § 1021.5;

12      10.      That plaintiffs and the Plaintiff Class be awarded pre-judgment interest on all sums

13  collected;

14      11.      For costs of suit herein incurred; and

15      12.      For such other and further relief as the Court may deem proper.

16

17  DATED: February 17, 2004                    THE STURDEVANT LAW FIRM
                                                A Professional Corporation
18

19

20                                              By: _____
21                                              MARK T. JOHNSON

22                                              Attorneys for plaintiffs and the Plaintiff Class

23

24

25

26

27

28  F:\361_Miller\2004+\Pleadings\P-Complaint 2005 - Anderson.wpd

# EXHIBIT

# F

WILLIAM L. STERN (BAR NO. 96105)
ARTURO J. GONZALEZ (BAR NO. 121490)
HEATHER A. MOSER (BAR NO. 212686)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile:  415.268.7522

6

ARNE D. WAGNER (BAR NO. 78464)
CALVO & CLARK, LLP
1 Lombard Street, Second Floor
San Francisco, CA 94111
Telephone No.: (415) 374-8370
Facsimile No.: (415) 374-8373
10

Attorneys for Defendant
BANK OF AMERICA, N.A.
12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                     COUNTY OF SAN FRANCISCO

15                   UNLIMITED CIVIL JURISDICTION

16

| | |
|---|---|
| SCOTT ANDERSON, PAUL MILLER, WILLIAM HAWKRIDGE, individually and on behalf of others similarly situated, | Case No.  CGC-05-438769 |
| Plaintiffs, | **ORDER GRANTING DEFENDANT BANK OF AMERICA, N.A.'S MOTION TO STAY PROCEEDINGS** |
| v. | Date:  September 14, 2005<br>Time:  9:30 am<br>Dept:  301 |
| BANK OF AMERICA, N.A. and DOES 1-50, | The Honorable James L. Warren |
| Defendants. | Complaint Filed: February 17, 2005<br>Trial Date:  Not Set |

F I L E D
San Francisco County Superior Court

OCT 2 5 2005

GORDON PARK-LI, Clerk

BY: _____ Deputy Clerk

I M A *
OCT 2 5 2005

1    Defendant Bank of America, N.A.'s Motion to Stay Proceedings came on regularly for

2 hearing at 9:30 am on September 14, 2005, in Department 301 of this Court. James C. Sturdevant

3 and Mark T. Johnson of the Sturdevant Law Firm appeared for the plaintiffs; Arne D. Wagner of

4 Calvo & Clark LLP appeared for defendant. The Court having read the papers submitted in

5 connection with the motion and heard oral argument, and good cause appearing,

6

7    IT IS HEREBY ORDERED that the Motion to Stay Proceedings is granted, and that all

8 proceedings herein are stayed. The foregoing is without prejudice to the right of any party to

9 apply to [Department 301 or to the Discovery Commissioner] of this Court for leave to propound

10 limited discovery. The taking of such discovery shall be permitted only upon a showing of good

11 cause by the requesting party that, absent such discovery, the information sought will cease to be

12 available. Either party may apply, upon a showing of good cause, to modify or terminate the stay

13 in the future. Unless so modified or terminated, the stay shall remain in force until ten days after

14 further appellate review of the Judgment entered by this court in *Miller v. Bank of America* , Case

15 No. 301917, is concluded or no longer possible. The parties shall notify the Court when that

16 event has occurred.

18 ~~The case management conference set for October 14, 2005 in Department 212 is vacated~~

19

**IT IS SO ORDERED.**

20

21 Dated: ___/8 / 25 /___,2005

22                               The Honorable James L. Warren

                                     Judge of the Superior Court

23

24

25

26

27

28

1

# EXHIBIT

# G

‖‖‖‖‖‖‖‖‖‖‖
*6126618*

1   JOHN L. WHEELER
    GLORIA A. WHEELER
2   181 Hunter Avenue
    Oakland, CA 94603
3   (510) 635-6903

4   Plaintiffs In Propria Persona

5

6

7

8                SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

9                            UNLIMITED JURISDICTION

10

11  JOHN L. WHEELER, GLORIA A.          No. _RG_ 08389597
    WHEELER,
12                                      COMPLAINT FOR FRAUD, VIOLATION
             Plaintiffs,                OF CODE OF CIVIL PROCEDURE
13                                      §8704.080, VIOLATION OF CODE
          vs.                           OF CIVIL PROCEDURE §1750, ET
14                                      SEQ, VIOLATION OF CODE OF
    BANK OF AMERICA, N.T. & S.A. a      CIVIL PROCEDURE §3294;
15  California corporation, and         INTENTIONAL INFLICTION OF
    LIBERTY REVERSE MORTGAGE and        EMOTIONAL DISTRESS; VIOLATION
16  SEATTLE FINANCIAL GROUP, and        OF BUSINESS & PROFESSIONS CODE
    DOES 1-10, inclusive,              §17200 ET SEQ., AND VIOLATION
17                                      OF BUSINESS & PROFESSIONS CODE
             Defendants.               §17500
18  _____/

19        Plaintiffs allege that, at all times herein relevant:

20                            INTRODUCTION

21        Plaintiffs John L. Wheeler and Gloria A. Wheeler

22  (hereinafter "plaintiffs") bring this action to challenge

23  defendants' unlawful and unfair practice on debiting Social

24  Security Direct Deposit accounts for amounts protected from levy

25  law and assessing unfair and unconscionable overdraft and return

26  item fees from Social Security Direct Deposit Accounts.

27  Plaintiffs seek compensatory and punitive damages, restitution,

28                                   1

    COMPLAINT

FILED
ALAMEDA COUNTY
MAY 28 2008
CLERK OF THE SUPERIOR COURT
By _____ Deputy

1  declaratory and injunctive relief, and attorney's fees, costs and

2  expenses.

3                                **PARTIES**

4      1.    Plaintiffs are residing at all relevant times in the

5  City of Oakland, County of Alameda, California.  Plaintiffs are

6  consumers who have a Social Security Direct Deposit account with

7  defendant Bank of America, N.T. and S.A. (hereinafter defendant

8  Bank of America).  At all times material herein, plaintiffs'

9  Social Security payments from the U. S. Government were directly

10 deposited into their accounts with defendant Bank of America once

11 each month.  Defendant B of A has repeatedly levied upon

12 plaintiffs' Social Security Direct Deposit Accounts for debts

13 allegedly owed to Bank of America.  Bank of America is prohibited

14 by law from levying upon Social Security direct deposit funds.

15     2.    "At all material times, defendant Bank of America was

16 and is a California corporation with its principal place of

17 business in Oakland, California.  Bank of America is engaged in a

18 nationwide business of marketing and providing banking and other

19 financial services, including Social Security Direct Deposit.

20 Bank of America has offices throughout California, including

21 Alameda County.  Bank of America affirmatively solicits Social

22 Security Direct Deposit customers residing in the State of

23 California, and provides services to and collects payments from

24 such customers.

25         November 8, 2005, plaintiffs paid defendant Bank of

26 America $148.53 cashier's check No. 412925025 purchased from Bank

27 of America.  Plaintiffs went into Bank of America and paid.

28                                2

---

COMPLAINT

1        On 11/8/05, plaintiffs went into Bank of the West to

2   open up a checking account. Bank of the West told plaintiffs

3   they could not open up a checking account because plaintiffs were

4   writing bad checks and non-sufficient funds. Bank of America

5   reported to Chex System and also reported to Asset Acceptance,

6   LLC debt collect this is a debt collect. Bank of America put its

7   plaintiffs credit report, saying plaintiff John L. Wheeler owed

8   them $519.22.

9        On 6/22/06, Liberty Reverse Mortgage and Bank of

10  America settlement statement total disbursements to plaintiffs

11  $38,406.53. Equal disbursements to borrower $35,914.71, loan

12  amount $191,578.83, total settlement charges $17,257.59.

13  Defendant charged plaintiffs mortgage insurance premium for

14  SMC/FHA $7,255.80 up front.

15       On Reverse Mortgage statement each statement they are

16  charging plaintiffs for FHA Mortgage Insurance which has already

17  been paid up front. Reverse Mortgage Account Statement Seattle

18  Savings Bank Loan Number 4393069. Bank of America charged

19  plaintiffs for FHA Mortgage Insurance each month for 11/30/07,

20  $96.84. This money was taken out up front.

21       6/22/06 $7,255.80 was taken out for FHA Mortgage

22  Insurance. Also charged plaintiffs $903.00 for title insurance.

23       On 12/19/05, defendant Bank of America charged

24  plaintiffs account $1260.00. Plaintiff John Wheeler did not get

25  this money out of the bank and he did not sign for that money.

26

27

28                                 3

COMPLAINT

On 6/16/06, defendant Bank of America charged plaintiffs' account $100.00. Plaintiff John Wheeler did not sign for that money.

## GROUND FOR PUNITIVE DAMAGES

Plaintiffs contend that defendant accomplished the fraud complained of through its management practices and the acts of its employees and agents. Plaintiffs further contend that the practices and acts were malicious, oppressive, and fraudulent within the meaning of California Code of Civil Procedure §3294. Accordingly, additional damages should be assessed defendant for the sale of example and by way of punishing defendant.

The relevant subdivisions of §3294 provide as follows:

(a) In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud or malice. The plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing defendant.

## NOTICE OF INSUFFICIENT FUNDS

| Date | Fees |
|------|------|
| Dec 6, 2005 | $33.00 |
| Dec 7, 2005 | 93.00 |
| Jan 1, 2006 | 34.00 |
| Feb 3, 2006 | 31.00 |
| Feb 6, 2006 | 35.00 |
| Feb 3, 2006 | 31.00 |
| May 2, 2006 | 68.00 |
| May 11, 2006 | 34.00 |
| May 15, 2006 | 34.00 |
| May 22, 2006 | 34.00 |
| May 31, 2006 | 34.00 |
| Jun 14, 2006 | 34.00 |
| Jun 27, 2006 | 35.00 |
| Jul 3, 2006 | 35.00 |
| Jul 14, 2006 | 35.00 |

4

COMPLAINT

```
Jul 17, 2006                 35.00
Jul 24, 2006                 35.00
Nov 3, 2006                  34.00
Jan 3, 2007                  35.00
Jan 22, 2007                 35.00
Apr 25, 2007                 70.00
May 1, 2007                  35.00
May 9, 2007                  35.00
May 10, 2007                 35.00
Jul 11, 2007                133.05
Jul 13, 2007                 35.00
```

3.   Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1-50, and therefore sues these defendants by such fictitious names. Plaintiffs will amend this complaint to state the true names and capacities when ascertained. Plaintiffs are informed and believe that each of the fictitiously named defendants is responsible in some manner for the occurrence and damages alleged herein, and that plaintiffs' damages as hereinafter set forth were proximately caused by said defendants.

4.   Plaintiffs are informed and believe and thereon allege that each of the defendants acted in concert with each and every other defendant intended to and did participate in the events, acts, practices and courses of conduct alleged herein, and was a proximate cause of damage and injury thereby to plaintiffs as alleged herein.

5.   At all times herein mentioned, each defendant was the agent or employee of each of the other defendants and was acting within the course and scope of such agency or employment.

/////
/////
/////

5

COMPLAINT

<u>FIRST CAUSE OF ACTION FOR DAMAGES AND PUNITIVE DAMAGES</u>

(Violation of California Civil Code §§1709, 1710 (Fraud)

Asserted on Behalf of Plaintiff)

6.    Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 5 above as if fully alleged herein.

7.    At all times herein mentioned, defendant Bank of America was in the business of providing banking services, including but not limited to bank deposit accounts, to the general public.  Among the accounts provided were accounts into which direct deposits of government benefits could be and were made.

8.    At all times herein mentioned, defendant Bank of America represented to the public through brochures, advertisements, and other means that their direct deposit accounts were safe and secure.  Bank of America further represented to the public that direct deposit is the safest, most reliable way to deposit annuity, pension or retirement checks, including but not limited to Social Security benefits and veteran's benefits.

9.    Bank of America's representations concerning safety and security were untrue in that at all time material herein, Bank of America imposed unexpected and unlawful levies, in violation of California Code of Civil Procedure §704.080, upon its direct deposit account holders, rendering the direct deposit account unsafe and insecure.

6

COMPLAINT

10. Bank of America made the representations herein alleged with the intention of inducing the public, including but not limited to plaintiffs, to purchase, maintain, and use Bank of America's direct deposit accounts.

11. On 6/22/06, Seattle Mortgage Company frauded plaintiffs out of $7,255.80.

12. On 11/8/05, Bank of America frauded plaintiffs out of $148.53.

13. On 5/5/07, Bank of America reported to Asset Acceptance, LLC that plaintiff John Wheeler still owed Bank of America $534.34.

14. Plaintiffs were aware of Bank of America's representations herein alleged and relied on them in purchasing and maintaining their direct deposit government benefit accounts with Bank of America.

15. At the time Bank of America made the representations herein alleged, Bank of America knew that the representations were false.

16. Bank of America made the representations herein alleged with the intention of depriving plaintiffs of property or legal rights, to with: the use of some or all of their direct deposit government benefits, or otherwise causing injury, and was guilty of fraud.

17. As a proximate result of Bank of America's intentional misrepresentations, plaintiffs were damaged by suffering the loss of some of their government benefits and by being unable to acquire, possess, and use the goods and services ordinarily paid

7

COMPLAINT

1  for by their government benefits, in an amount to be proven at
2  trial.
3      18.  The wrongful conduct of Bank of America, as herein
4  alleged was intentional and was done with malicious, oppressive
5  or fraudulent intent.  Plaintiffs are therefore entitle to
6  punitive damages.
7      SECOND CAUSE OF ACTION FOR DAMAGES AND PUNITIVE DAMAGES
8          (Violation of California Civil Code §§1709, 1710
9      (Negligent Misrepresentation) Asserted on Behalf of Plaintiffs
10     19.  Plaintiffs reallege and incorporate herein by reference
11 the allegations set forth in paragraphs 1 through 18 above as if
12 fully alleged herein.
13     20.  At the time Bank of America made the misrepresenta-
14 tions herein alleged, Bank of America had no reasonable grounds
15 for believing the representations to be true.
16     21.  As a proximate result of Bank of America's negligent
17 misrepresentations, plaintiffs were damaged by suffering the loss
18 of some of their government benefits and by being unable to
19 acquire, possess, and use the goods and services ordinarily paid
20 for by their government benefits, in an amount to be proven at
21 trial.
22     THIRD CAUSE OF ACTION FOR DAMAGES AND PUNITIVE DAMAGES
23          (Violation of California Civil Code §704.080
24              Asserted on Behalf of Plaintiffs)
25     22.  Plaintiffs reallege and incorporate herein by reference
26 the allegations set forth in paragraphs 1 through 21 above as if
27 fully alleged herein.
28                              8

COMPLAINT

23. California Code of Civil Procedure §704.080 provides that Social Security payments that are directly deposited by the U.S. Government into a bank account are exempt from levy, regardless of the amount of the deposit. The statute further establishes that Social Security direct deposit accounts are exempt from levy, without the consumer having to make a claim of exemption, for amounts up to $2,000 for a single depositor account and for amounts up to $3,000 for an account with two or more depositors.

24. California Code of Civil Procedure §704.080(d) also specifically requires a financial institution that holds a Social Security direct deposit account to follow certain procedures when processing a levy such that no exempt funds are seized.

25. Defendant Bank of America has engaged, and is continuing to engage, in a business practice of unlawfully debiting accounts of Social Security Direct Deposit account holders for amounts sought through levy by alleged creditors, including without limitation, defendant Bank of America and assessing service fees for the processing of such levies. Such practices violate California Code of Civil Procedure §704.080 in that Social Security Direct Deposit funds are exempt from levy.

26. Defendant Bank of America's violation of California Code of Civil Procedure §704.080 constitutes a tort in that it is a breach of a non-consensual duty owed to another. California Code of Civil Procedure §704.080 was enacted for the protection of plaintiffs and embodies a public policy that Social Security Direct Deposit accounts shall not be subject to levy.

9

COMPLAINT

1    Accordingly, defendant Bank of America's violation of said

2    statute constitutes a tort and defendant is therefore liable for

3    all damages suffered by plaintiffs.

4        27.  As a result of defendant Bank of America's unlawful

5    practice, plaintiffs were denied funds to which they are

6    statutorily entitled and were charged improper service fees, and

7    have suffered substantial damages, including without limitation,

8    monetary losses.

9        28.  Defendants have engaged in the aforementioned conduct

10   willfully and for the specific purpose of denying plaintiffs

11   rightful access to the funds in their accounts and collecting

12   substantial bank service fees.  Defendants have thus acted with

13   oppression and malice in that they have deliberately engaged in

14   conduct that has subjected plaintiffs to cruel and unjust

15   hardship in conscious disregard of such individuals' statutory

16   rights, and have carried out such conduct with a willful and

17   conscious disregard of the rights of plaintiffs.  Accordingly,

18   plaintiffs are entitled to an award of punitive damages according

19   to proof at the time of trial.

20   <u>FOURTH CAUSE OF ACTION FOR DAMAGES AND PUNITIVE DAMAGES</u>

21       (Intentional Infliction of Emotional Distress:

22            Asserted on Behalf of Plaintiffs)

23       29.  Plaintiffs reallege and incorporate herein by reference

24   the allegations set forth in paragraphs 1 through 28 above as if

25   fully alleged herein.

26       30.  Defendants knew at all relevant times that debiting a

27   Social Security Direct Deposit account pursuant to a levy and

28                                 10

COMPLAINT

1   collecting substantial bank service fees for processing such levy

2   were contrary to the law and policy of the State of California,

3   and in violation of the statutory rights of the plaintiffs.

4   Defendants further knew that plaintiffs had limited income and

5   that such acts would cause them considerable hardship and

6   emotional distress.  Nevertheless, defendants committed such acts

7   deliberately and repeatedly, and with conscious disregard for the

8   rights of the plaintiffs.

9       31.  As a result of defendant's acts as hereinabove

10  described, plaintiffs have suffered severe emotional distress,

11  including without limitation, anger, stress, worry, anxiety,

12  humiliation, fear, depression, fatigue and frustration.

13      32.  Defendants committed the above-described wrongful and

14  intentional acts because hey felt confident in their position of

15  wealth, sophistication and power, and in their ability to

16  manipulate plaintiffs and to coerce plaintiffs into relinquishing

17  rights guaranteed to them by law.  Defendants deliberately,

18  willfully and maliciously pursued this course of conduct because

19  they had no fear that the plaintiffs would understand the nature

20  of the transactions and/or be able to assert their legal rights.

21  Defendants have thus acted with oppression and malice in that

22  they have engaged in despicable conduct, intended to cause cruel

23  and unjust hardship to plaintiffs, and have carried out such

24  conduct with a willful and conscious disregard of the rights of

25  plaintiffs.  Accordingly, plaintiffs seek and are entitled to

26  awards of compensatory and punitive damages according to proof at

27  the time of trial.

28                                  11

COMPLAINT

33.  In making and disseminating the statements herein alleged, Bank of America knew, or by the exercise of reasonable care should have known, that the statements were and are untrue or misleading and so acted in violation of California Business and Professions Code §17500.

34.  In addition, the business and act and practices of defendant Bank of America as hereinabove described constitute a fraudulent business practice in violation of the UCL in that such acts and practices are likely to deceive plaintiffs as to their legal rights and obligations with respect to the safety and security of their government benefit deposit accounts and protection from levies by Bank of America and from the consequences of excessive overdrafts.

35.  Pursuant to California Code of Civil Procedure §1021.5, plaintiffs are entitled to recovery their reasonable attorney's fees, costs and expenses incurred in bringing this action.

### FIFTH CAUSE OF ACTION

#### (Defamation)

36.  Plaintiffs reallege and incorporate herein by reference the allegations set forth in paragraphs 1 through 35 above as if fully alleged herein.

37.  Bank of America defamed plaintiffs by failing to remove the negative entries on plaintiffs' credit reports and, upon information and belief, by declaring to potential creditors of plaintiffs that plaintiffs still owed money to Bank of America regarding the $148.53.  Plaintiffs paid Bank of America with a Bank of America cashier check dated November 8, 2005.  Defendants

12

COMPLAINT

1  sold this account to Asset Acceptance, LLC Collection Agency.

2  The current balance is $543.34 that plaintiffs owe.

3       38.  Defendant Bank of America reported to Chex Systems that

4  plaintiffs were writing bad checks on insufficient funds.

5       39.  Plaintiffs went to open up an account with Bank of the

6  West on April 9, 2004, November 8, 2005, and they refused to open

7  plaintiffs a checking account.  Bank of the West said plaintiffs

8  were writing bad checks on insufficient funds.

9       40.  As a result of this defamation, plaintiffs have

10 suffered the damages described in preceding paragraphs of this

11 complaint.  Furthermore, Bank of America, in failing to remove

12 the negative entries contained in plaintiffs' credit report and,

13 upon information and belief, declaring to potential creditors of

14 plaintiffs that plaintiffs still owed money to Bank of America,

15 amounted to malice, fraud, and oppression within the meaning of

16 Civil Code §3294, subjecting this defendant to an award of

17 exemplary damages.

18                        **PRAYER FOR RELIEF**

19      WHEREFORE, plaintiffs respectfully pray as follows:

20      1.   That this court find and declare the defendants's acts

21 and practices as described herein to be unlawful, unfair and

22 fraudulent;

23      2.   That plaintiffs be awarded compensatory damages

24 according to proof at trial;

25      3.   That plaintiffs be awarded punitive damages according

26 to proof at trial;

27

28                              13

COMPLAINT

1  Civil Code §3294, subjecting this defendant to an award of

2  exemplary damages.

**PRAYER FOR RELIEF**

4      WHEREFORE, plaintiffs respectfully pray as follows:

5      1.   That this court find and declare the defendants's acts

6  and practices as described herein to be unlawful, unfair and

7  fraudulent;

8      2.   That plaintiffs be awarded compensatory damages

9  according to proof at trial;

10     3.   That plaintiffs be awarded punitive damages according

11 to proof at trial;

12     4.   That defendants be preliminarily and permanently

13 enjoined from engaging in the unlawful, unfair and fraudulent act

14 and practices alleged herein;

15     5.   That plaintiffs be awarded attorney's fees and expenses

16 pursuant to California Code of Civil Procedure §1021.5 and

17 California Civil Code §1780.

18     6.   That plaintiffs be awarded pre-judgment interest on all

19 sums collected;

20     7.   For costs of suit herein incurred; and

21     8.   For such other and further relief as the court may deem

22 proper.

23     Dated:  May 28, 2008

24                                    _____
                                      JOHN WHEELER
25                                    Plaintiff, In Pro Per

26                                    _____
                                      GLORIA WHEELER
27                                    Plaintiff In Pro Per

28                                16

COMPLAINT